**In re Harlan R. SPAUDE and Marilyn E. Spaude, Debtors.**

**Harlan R. SPAUDE and Marilyn E. Spaude, Plaintiffs,**

**v.**

**STATE BANK OF GIBBON and the Federal Land Bank of St. Paul, Defendants.**

**Bankruptcy No. 3–88–252**
**Adv. No. 3–88–136.**

United States Bankruptcy Court, D. Minnesota, Third Division.

March 28, 1990.

Clark A. Tuttle, III, New Ulm, Minn., for defendant State Bank of Gibbon.

Thomas W. Van Hon, Fairfax, Minn., for plaintiffs.

### MEMORANDUM ORDER FOR JUDGMENT

GREGORY F. KISHEL, Bankruptcy Judge.

This adversary proceeding came on before the Court on March 2, 1989, for trial. Plaintiffs appeared personally and by their attorney, Thomas W. Van Hon. Defendant State Bank of Gibbon ("Defendant") appeared by its attorney, Clark A. Tuttle, III. There was no appearance on behalf of De-

fendant the Federal Land Bank of St. Paul.[1] Upon the evidence adduced at trial, the arguments and pre- and post-trial briefs of counsel, all of the other files and records in this adversary proceeding, and relevant proceedings in Plaintiffs' Chapter 7 case, the Court makes the following memorandum order.

Plaintiffs filed a voluntary petition under Chapter 7 on January 27, 1988. They are farmers in Sibley County, Minnesota. Defendant holds a second mortgage against Plaintiffs' homestead, under color of a March 30, 1984 mortgage deed which was duly filed for record on March 21, 1985. Plaintiffs' homestead consists of approximately 130 acres of farm real estate, including a building site. As of the commencement of this case, the Federal Land Bank of St. Paul held the first mortgage against the homestead, under color of a November 24, 1981 mortgage filed for record on December 4, 1981. As of January 28, 1988, Plaintiffs' debt to the Federal Land Bank totalled $127,64.07 in principal and accrued interest.

In their complaint in this adversary proceeding, Plaintiffs allege that their homestead had a fair market value of $117,-000.00 as of the date of their bankruptcy filing. This is the value which they had assigned to it in their B Schedules in their case. At trial, Plaintiffs produced two witnesses with experience in real estate evaluation, one of whom testified to a value of $138,000.00 for the homestead, as of April 26, 1988, and the other of whom assigned a value of $142,400.00, more or less, as of the date of Plaintiffs' bankruptcy filing.

As relief, Plaintiffs have requested a determination of the value of Defendant's secured claim pursuant to 11 U.S.C. § 506(a).[2] In their prayer for relief, they request an order avoiding Defendant's second mortgage against their homestead in its entirety, pursuant to 11 U.S.C. § 506(d).[3] In their post-trial letter brief, they amended their request to conform to the evidence; they now ask that the value of Defendant's secured claim be determined as the difference between a collateral value of $138,000.00, and the $127,-064.07 value of their filing-date debt to Federal Land Bank, and that Defendant's mortgage be avoided to the extent that its debt exceeded the value of this allowed secured claim.[4]

1. Pursuant to a stipulation with Plaintiffs, the Federal Land Bank has never served or filed an answer herein. Plaintiffs' prayer for relief in their amended complaint does not directly affect its interests.

2. In pertinent part, the statute provides:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property ...
11 U.S.C. § 506(a).

3. In pertinent part, the statute provides:

To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void ...
11 U.S.C. § 506(d). Subsections 506(d)(1) and (2) establish two exceptions to the avoidability of liens which are not supported by allowed secured claims. The first exception operates to preserve pre-petition liens granted to secure fu-

ture family support obligations which are unmatured as of the bankruptcy filing, and liens which secure various sorts of claims against the debtor for contribution and indemnity. The second exception preserves liens which would be subject to avoidance under a very technical limitation of the concept of "allowed secured claim" to one deemed "allowed" by the filing of a proof of claim pursuant to 11 U.S.C. § 502(a). This exception is available only where the lien's vulnerability results solely from the creditor's failure to perform the ministerial act of filing a proof of claim. Neither of these exceptions is applicable on the facts at bar.

4. In their complaint, Plaintiffs also requested a judgment nullifying Defendant's mortgage on the ground that some party unknown had altered it after Plaintiffs had signed it, to extend it to secure consolidated debt substantially in excess of that which Plaintiffs had intended it to secure. Plaintiffs' own testimony on the supposed alteration was inconclusive at best. They did not adduce expert testimony to establish the extent of the alleged alteration, and their counsel neither briefed nor argued the issue. The Court summarily rejects this claim; Plaintiffs failed to prove it by even a preponderance of the evidence.

Three of the Judges of this Court, including the undersigned, have published decisions applying 11 U.S.C. § 506(d) in the context of a Chapter 7 case. In all of them, the Court allowed Chapter 7 debtors to invoke this statute to "strip down" mortgages or liens against exempt property, to the amount of actual value in that property to which those liens had attached as of the date of the debtor's bankruptcy filing. *See In re Kostecky*, 111 B.R. 823 (Bankr.D. Minn.1990) (Kishel, J.); *In re Haugland*, 83 B.R. 648 (Bankr.D.Minn.1988) (O'Brien, J.); *In re Cook*, 67 B.R. 240 (Bankr.D.Minn. 1986) (O'Brien, J.); *In re Gibbs*, 44 B.R. 475 (Bankr.D.Minn.1984) (Kressel, J.).

At trial, Defendant set forth two lines of defense.

■ As its secondary line, it produced an appraiser's testimony that the value of the homestead was $152,000.00 as of the date of Plaintiffs' bankruptcy filing. In conjunction with Plaintiffs' evidence, of course, this produced an issue of fact. The Court need not assess the comparative probity and credibility of the competing valuation evidence to resolve this fact issue, however; Defendant's primary line of defense, aired in a motion for dismissal at the close of Plaintiffs' case,[5] conclusively disposes of Plaintiffs' request for relief as a matter of law. That defense is that Plaintiffs' request for § 506(d) relief was mooted by other events during the pendency of this adversary proceeding.

On May 24, 1988, the Court granted Plaintiffs a discharge under Chapter 7. As a result, the automatic stay of 11 U.S.C. § 362(a)(5), which had restrained and enjoined Defendant from enforcing its rights as a secured creditor, was terminated. 11 U.S.C. § 362(c)(2)(C). Defendant then commenced proceedings to foreclose its mortgage by advertisement pursuant to MINN. STAT. c. 580 in mid-July, 1988.[6] The Sibley County Sheriff held a foreclosure sale on October 28, 1988. Defendant was the successful bidder at that sale, bidding in a total of $55,288.00 for the three separate tracts subject to its mortgage.[7] Plaintiffs had never requested relief to postpone, strike, or enjoin the sheriff's sale, whether in this Court or any other. As of the date of the trial in this adversary proceeding, Plaintiffs had not exercised their right to redeem the property from the sale.

Under Minnesota law, a sheriff's sale in proceedings for foreclosure by advertisement discharges the mortgage against subject real estate, even as security for the debt. *Gardner v. W.M. Prindle & Co.*, 185 Minn. 147, 150, 240 N.W. 351, 352 (1932). After the sheriff's sale, the rights of the parties are no longer fixed by the terms of the mortgage; rather, they are governed by the terms of MINN.STAT. c. 580. *Id.* When a mortgagee is the successful bidder at the sale, under a bid equalling the full amount of its debt and the expenses allowable under statute, the parties' prior debtor-creditor relationship is extinguished. *Evans v. Rhode Island Hospital Trust Co.*, 67 Minn. 160, 163, 69 N.W. 715, 716 (1897); *Carnel v. Travelers Ins. Co.*, 402 N.W.2d 190, 192–3 (Minn.App.1987); *In re Klein*, 9 F.Supp. 57, 59 (D.Minn.1934).

This follows from the fact that a sale for the full amount of the indebtedness extinguishes the mortgage debt. *Cross Cos., Inc. v. Citizens Mortgage Investment Trust*, 305 Minn. 111, 119, 232 N.W.2d 114, 119 (1975); *Gardner v. W.M. Prindle & Co.*, 185 Minn. at 150, 240 N.W. at 352; *Carlson v. Presbyterian Board of Relief*, 67 Minn. 436, 439, 70 N.W. 3, 4 (1897). The former mortgagee is now a purchaser; though its rights in the subject property

---

**5.** The Court took the motion for dismissal, brought under FED.R.CIV.P. 41(b) and BANKR.R. 7041, under advisement, and required Defendant to present its evidence.

**6.** The Sibley County Sheriff served a notice of foreclosure on Plaintiffs on July 16, 1988—five days after Plaintiffs filed the complaint in this adversary proceeding.

**7.** Defendant produced testimony to the effect that its officers had arrived at this bid by calculating the rental value of the farmland over the period of the foreclosure and the period for redemption from the foreclosure.

are subject to defeasement via redemption by the mortgagor or by junior lienholders, upon the expiration of redemption periods they will ripen to perfect title. *Hokanson v. Gunderson*, 54 Minn. 499, 503, 56 N.W. 172, 173 (1893); *In re Klein*, 9 F.Supp. at 59. In the case of a successful bid for something less than the full amount of the pre-foreclosure debt, the parties' debtor-creditor relationship may survive, as to the balance of the debt not satisfied by application of the sale proceeds. However, at least as to the security previously afforded by the mortgage, it is no longer a relationship between a debtor and a secured party. *Loomis v. Clambey*, 69 Minn. 469, 471, 72 N.W. 707, 708 (1897).

Once this body of law is recognized, it is clear that, during the pendency of this adversary proceeding, Debtors lost the ability to invoke 11 U.S.C. § 506(d) to affect Defendant's rights. The parties' legal relationship was transmuted upon Defendant's sheriff's sale. This indelible change mooted this adversary proceeding. *See In re Van Iperen*, 819 F.2d 189 (8th Cir.1987) (sale in foreclosure of security interest in personalty moots debtor's claim of exemption in subject collateral, and defeats debtor's derivative right to lien avoidance under 11 U.S.C. § 522(f)(2)(B)).[8] *Compare Justice v. Valley Nat'l Bank*, 849 F.2d 1078 (8th Cir.1988) (concluding that sheriff's sale of real estate in mortgage foreclosure pursuant to South Dakota law extinguished mortgage against real estate, and satisfied and paid underlying debt; holding that debtors' interests thereafter were limited to their right to redeem under South Dakota statute; and barring debtors from restructuring rights of former mortgagor via Chapter 12 reorganization).

Anticipating the possibility of this holding, Debtors' counsel has protested that adoption of such a rationale would result in a proverbial "race to the courthouse" between mortgagees seeking to foreclose after termination of the automatic stay in bankruptcy, and debtors seeking to reap the benefits of § 506(d) lien avoidance before their rights were extinguished by foreclosure. He then requested that the Court utilize its powers under 11 U.S.C. § 105(a)[9] to "void" the sale and redemption period here, as a preliminary to granting § 506(d) relief to his clients.

■ While the grant of authority under § 105(a) is broad on its face, it is not without limits. "[A]bsent a specific grant of authority from Congress or exceptional circumstances, a bankruptcy court may not exercise its equitable powers to create substantive rights which do not exist under state law." *Johnson v. First Nat'l Bank of Montevideo*, 719 F.2d 270, 274 (8th Cir. 1983), *cert. den.*, 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984). The equity powers of the Bankruptcy Court "must and can only be exercised within the confines of the Bankruptcy Code." *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206, 108 S.Ct. 963, 968, 99 L.Ed.2d 169 (1988). Where a creditor has invoked remedies and settled its property rights in good faith reliance upon the termination of the automatic stay in bankruptcy, the Court should not and may not invoke its broad equitable powers to void the results of the creditor's action—even if doing so would enable the debtor to make full use of statutory remedies previously available to him under the Code. Plaintiffs' request for relief from

---

8. It is immaterial that *In re Van Iperen* involved an exemption-derivative lien avoidance remedy, rather than a value-derivative lien avoidance remedy like the one involved here. In both cases, the debtors sought to defeat a creditor's security rights in property or its proceeds, ultimately based on a claim of exemption in the original property. As the Eighth Circuit noted,

> Once collateral is taken and converted into cash, no court is able to formulate adequate relief to the debtor.... The concept of exempt property is designed to let the debtor retain a few basic essentials for a fresh start. Money, even proceeds from the sale of collateral, does not have this quality when it is in the hands of a third party who has properly used state collection procedures.

819 F.2d at 191.

9. This is the Bankruptcy Court's "All-Writs Act": "The Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

Defendant's foreclosure sale is denied.[10]

On the basis of the foregoing analysis,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:

1. That Plaintiffs' assertion of a right under 11 U.S.C. § 506(d) to avoid the mortgage lien in favor of Defendant State Bank of Gibbon against the Sibley County, Minnesota real estate described as follows:

> The South Half of the Southeast Quarter (S ½ of SE ¼) of Section Number Thirteen (13); and the North one-eighth (⅛) of the Northeast Quarter (NE ¼) of Section Number Twenty-four (24), all in Township Number One Hundred Twelve (112) North of Range No. Thirty-one (31), West of the 5th Principal Meridian, Sibley County, Minnesota.

AND

> The North fifty (50) acres of the Northeast Quarter (NE ¼), excepting the North ⅛ of the said Northeast Quarter (NE ¼); and also excepting therefrom a tract of land described as follows: Beginning at a point 36½ rods east and 20 rods south of the Northwest corner of said Northeast Quarter (NE ¼); thence due south 30 rods, thence due east 2 rods, thence due north 30 rods, thence due west 2 rods, to and terminating at the given point of beginning, all of said land being in Section Number Twenty-four (24) in Township Number One Hundred Twelve (112) North of Range Number Thirty-one (31) West, Sibley County, Minnesota.

became moot as a result of the sale by the Sibley County Sheriff of that real estate during Defendant's foreclosure of its mortgage.

2. That, as a result, the mortgage lien which Defendant State Bank of Gibbon held as of Plaintiffs' January 27, 1988 bankruptcy filing is not avoided, and this adversary proceeding is dismissed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

---

**10.** This all being said, the Court does recognize the bind in which Chapter 7 debtors could find themselves. The question of whether § 105(a) would lie to enjoin a sheriff's sale pending an expedited resolution of a request for § 506(d) relief is not before the Court in this adversary proceeding. A brief review of research materials does not reveal a case on point, either binding appellate precedent or not. Even persuasive authority arising out of comparable circumstances is scant. In a Chapter 13 case, one court enjoined a mortgagee from proceeding with foreclosure, pending the litigation of the debtors' challenges to the mortgagees' position under fraud, usury, and Truth in Lending theories, notwithstanding its prior grant of relief from stay. *In re Jackson,* 42 B.R. 76 (Bankr.D. D.C.1984). In a Chapter 11 case, another court enjoined a mortgagee from enforcing its rights after a sheriff's sale, pending decision on the debtor's fraudulent-conveyance challenge to the whole foreclosure. *In re Fargo Biltmore Motor Hotel Corp.,* 45 B.R. 568 (Bankr.D.N.D.1984). These cases may be legally distinguishable from that of a Chapter 7 debtor invoking § 506(d), or they may not. This question must await its resolution in another case or adversary proceeding.