In re TWENVER, INC., d/b/a KTVD
Channel 20, Debtor.

CHRYSLER CAPITAL
CORP., Appellant,

v.

OFFICIAL COMMITTEE OF
UNSECURED CREDITORS,
et al., Appellees.

Civ. A. No. 92–K–2038.

United States District Court,
D. Colorado.

Jan. 22, 1993.

David G. Epstein, King & Spalding, Atlanta, GA, Thomas C. Bell, Davis, Graham & Stubbs, Thomas C. Seawell, Robert C. Montgomery, Ducker Dewey & Seawell, Denver, CO, for appellant.

Caroline C. Fuller, Tom Pierce, Fairfield & Woods, David T. Brennan, Otten, Johnson, Robinson, Neff & Ragonetti, Denver, CO, Russell Hippe, Trabue, Sturdivant & DeWitt, Nashville, TN, for appellees.

## MEMORANDUM OPINION
## AND ORDER

KANE, Senior District Judge.

The sole issue in this bankruptcy appeal is whether the bankruptcy court has the power under § 105 of the Code to reimpose the stay in bankruptcy once it has entered an order lifting it. The appellant, Chrysler Capital Corporation, argues that the bankruptcy court may not use § 105 in this way to expand its powers under the Bankruptcy Code. The appellee, the Official Committee of Unsecured Creditors of Twenver, Inc., argues that the bankruptcy court's reimposition of the stay is consistent with § 105 and case law. I affirm.

### I. *Facts.*

Debtor Twenver, Inc. filed its petition for Chapter 11 reorganization on July 11, 1990. Twenver owns and operates KTVD Channel 20, a Denver, Colorado television sta-

tion. Chrysler Capital is Twenver's primary creditor, holding a claim of over $4 million secured by a lien on almost all of Twenver's property. The Committee represents Twenver's unsecured creditors, many of which are vendors of programs broadcast on KTVD. Despite several attempts, no successful plan of reorganization has been submitted in the more than two years that this case has been pending.

On August 13, 1992, Chrysler moved for relief from the stay under § 362(d), arguing that the property in which it held a security interest, particularly Twenver's cash collateral, was not adequately protected and that it was not necessary to Twenver's reorganization since no confirmable plan had been or was likely to be presented. The Committee responded to the motion, making two limited objections. First, it argued that Chrysler did not hold a valid security interest in Twenver's broadcasting license because federal law prohibited such an interest.[1] Second, the Committee argued that several post-petition payments by Twenver to Chrysler were avoidable and sought the court's permission to bring a separate action to recover these payments for the benefit of the estate.

On September 9, 1992, after notice and a hearing, the court granted Chrysler's motion for relief from the stay except with respect to Chrysler's interest in the broadcasting license, giving the parties a chance to further brief this issue. On September 18, 1992, the court granted Chrysler relief from the stay as to the license, as well.

On September 25, 1992, the Committee moved to vacate the court's September 9 and 18 orders under Fed.R.Civ.P. 59 and 60, made applicable to bankruptcy cases under Bankr.R. 9023 and 9024. The Committee argued that it was unaware of a pending offer to buy the station from Terence Brown, Twenver's station manager at the time of the hearing on Chrysler's motion for relief from the stay. Under Brown's offer and a corresponding reorganization plan, the assets of Twenver, Inc. would not be liquidated, the station would continue to offer a variety of programming, and it would continue to employ approximately 40 persons.[2] The Committee believed that Brown's offer would be more favorable to unsecured and administrative creditors and no less favorable to Chrysler. When the Committee's motion came on for hearing on October 6, 1992, the Committee additionally argued that § 105 of the Code permitted the court to reimpose the stay lifted by its earlier orders.

Chrysler adamantly opposed the Committee's motion. Its view was that the court's orders granting relief from the stay could not be vacated under Rule 59 or 60 because the standards under those two sections were not met. It argued that, at best, the Committee might be entitled to relief under Rule 60(b) for newly discovered evidence, but that the record did not support the Committee's contention that it had no knowledge of Brown's offer at the earlier hearing. In addition, Chrysler maintained that case law did not support the Committee's contention that § 105 provided an alternative basis for reimposition of the stay.

Despite Chrysler's objections, on October 8, 1992 the court granted the Committee's motion. It held that it could not vacate its orders under Rule 59 or 60 because the Committee knew or should have known of Brown's interest in acquiring the station before the hearing on Chrysler's motion for relief from stay. Nevertheless, it reimposed the stay pursuant to its equitable powers under § 105, finding that the standards for granting such injunctive relief under that section were satisfied. Chrysler now appeals this order.

## II. *Merits.*

■ Chrysler asserts that the bankruptcy court erred in holding that it could reim-

---

1. Twenver's broadcasting license was held by Twenver Broadcast, Inc. ("TBI"), a corporation formed by Twenver's principals. All of TBI's stock was pledged to Chrysler as security for its debt.

2. Chrysler was prepared to liquidate the assets of Twenver, Inc. It had been negotiating to sell these assets to a third party, who planned to operate the station as an outlet for a shopping channel which would employ only four persons and require much fewer resources.

pose the stay by invoking its powers under § 105. Section 105 is the bankruptcy statute akin to the All Writs Act. *See In re GSF Corp.*, 938 F.2d 1467, 1475 n. 6 (1st Cir.1991). It empowers the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a). In exercising its broad powers under § 105, however, the court must act in a manner consistent with the Code and may not create substantive rights not existent under the Code. *See United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir.1986).

Chrysler bases its argument on the concept of a "final order." It begins by noting that the bankruptcy court expressly found its September 9 and 18 orders to be final orders. Given this finding, Chrysler contends, the bankruptcy court could modify these orders only as permitted by Rules 59 and 60. The bankruptcy court concluded that the Committee had not demonstrated any basis for relief under these rules, yet proceeded to consider whether it had presented sufficient evidence to justify injunctive relief, considering this to be the proper test for reinvocation of the stay under § 105. Chrysler maintains that if a party fails to satisfy the requirements of Rule 59 or 60 to overturn a final judgment lifting the stay, the court may not do so under § 105.

Chrysler cites two cases in support of its position: *Spaude v. State Bank of Gibbon (In re Spaude)*, 112 B.R. 304 (Bankr. D.Minn.1990), and *White v. Bankers Mortgage Corp. (In re White)*, 22 B.R. 542 (Bankr.D.Del.1982). In *Spaude*, the debtors sought a determination of the value of a bank's mortgage on their farm, seeking to "strip down" the mortgage to the extent it exceeded the farm's fair market value. *See* 112 B.R. at 305–06. The court denied the motion, finding it moot because the bank had already foreclosed on the mortgage. It rejected the debtor's request that the court use its § 105 powers to void the sale, concluding that

> [w]here a creditor has invoked remedies and settled its property rights in good faith reliance upon the termination of the

automatic stay in bankruptcy, the Court should not and may not invoke its broad equitable powers to void the results of the creditor's action—even if doing so would enable the debtor to make full use of statutory remedies previously available to him under the Code.

*Id.* at 307. The *Spaude* court expressly declined to consider whether it could have used its powers under § 105 to enjoin a sheriff's sale that had not yet occurred pending resolution of the debtor's motion. *See id.* at 308 n. 10.

Similarly, in *In re White*, the debtors sought relief from a previous stipulation in which they agreed to a termination of the stay to permit a banking corporation to foreclose on the mortgage of their home, claiming they had a confirmable plan of reorganization. The bankruptcy court denied the motion, ruling that it could not grant relief under § 105 because the debtor's plan was not feasible. It reasoned that, because foreclosure had already occurred, "any Chapter 13 plan which attempts to cure and reinstate a mortgage following the entry of a judgment of foreclosure cannot be confirmed. In such a situation the plan would have to deal with payment of the full amount of the judgment within the time period of the plan." 22 B.R. at 543.

The circumstances of *Spaude* and *White* are distinguishable. In both cases, the court could not circumvent the effect of the foreclosure of the creditor's interest. Once there has been a foreclosure, the debtor-creditor relationship no longer exists, *see Spaude*, 112 B.R. at 306, and the court cannot "undo" what has already been done except in extraordinary circumstances, *see Piccolo v. Dime Sav. Bank*, 145 B.R. 753, 758–59 (N.D.N.Y.1992). Conversely, courts consistently recognize that if the creditor has not obtained vested rights in property in reliance on the bankruptcy court's order, the court may vacate or modify that order. *See Wayne United Gas Co. v. Owens–Illinois Glass Co.*, 300 U.S. 131, 137, 57 S.Ct. 382, 385, 81 L.Ed. 557 (1937) (affirming district court order

permitting rehearing of dismissal of debtor's bankruptcy petition, noting that bankruptcy court "has the power, for good reason, to revise its judgment upon seasonable application and before rights have vested on good faith of its action"); *Otte v. Manufacturer's Hanover Commerical Corp. (In re Texlon Corp.)*, 596 F.2d 1092, 1101 (2d Cir.1979) ("test is whether, upon granting the motion to reconsider, the court will be able to reestablish the rights of the opposing party as they stood when the original judgment was rendered"); *Marcus Hook Dev. Park, Inc. v. T.A. Title Ins. Co. (In re Marcus Hook Dev. Park, Inc.*, 143 B.R. 648, 662 (Bankr.W.D.Pa.1992) (court has power to vacate or modify orders so long as equitable to do so).

■■■ In this case, there was no evidence that Chrysler had obtained any vested rights in the collateral Twenver posted as security at the time of the hearing on the Committee's motion. There had been no foreclosure of real property and no sale or repossession of personal property. While Chrysler had contemplated exercising its rights in the security under the Uniform Commercial Code, at the time of the hearing it had not done so. (*See* Tr. Vol.III at 95.) Given Chrysler's limited reliance on the bankruptcy court's orders granting it relief from the stay, *Spaude* and *White* do not provide a basis for limiting the bankruptcy court's authority under § 105.

Several other cases support the Committee's contention that the bankruptcy court is empowered under § 105 to reimpose a stay. In *Smith v. Citifed (In re Smith)*, 111 B.R. 102 (Bankr.E.D.Pa.1990), the court explained the analysis it must undertake in deciding whether to reinstate the stay. First, the court adopted the basic test for injunctive relief set forth in *Wedgewood Investment Fund, Ltd. v. Wedgewood Realty Group, Ltd. (In re Wedgewood Realty Group, Ltd.)*, 878 F.2d 693, 701 (3d Cir.1989).[3] Under that test, the

applicant must show: (1) a substantial likelihood of success on the merits, (2) irreparable harm, (3) less harm to the opposing party, and (4) no violation of the public interest. *Smith*, 111 B.R. at 104–05. The *Smith* court went on to note, however, that in a Chapter 11 business reorganization, the first element "is met in the context of seeking reinstatement of a stay if the debtor has a reasonable probability of confirming a plan of reorganization, or if the debtor can establish that the secured party is adequately protected even if the § 362(d) order is vacated." *Id.* at 105 (citations omitted); *cf. White*, 22 B.R. at 542 (in Chapter 13 case, to determine whether to grant debtor's § 105 motion to enjoin a sheriff's sale, court must first examine feasibility of proposed reorganization plan.) Finding that the debtor's motion was not made in good faith and her proposed plan was not feasible, the *Smith* court proceeded to deny the debtor's motion to reimpose the stay, though it recognized its inherent power to do so.

Likewise, in *Salzer v. Gick (In re Gick)*, No. 91–1027, 1991 WL 119153 (Bankr. N.D.Ind.1991), the court unequivocally held that it had the authority under § 105 to reinstate a stay. The *Gick* court examined case law on both sides of the issue. In particular, it considered the argument made by Chrysler in this appeal that the court may not use its § 105 powers to modify a final order. The court analogized its case to a similar one, *In re Lafayette Dial, Inc.*, 92 B.R. 798 (Bankr.N.D.Ind. 1988), in which debtor had sought modification of a court's final order under 362(d)(1) conditioning continuance of the stay on payment of adequate protection. The court observed that, "while adequate protection orders were final, in the sense that they were capable of being appealed, they were not immutable," and were "more closely analogous to injunctions as opposed to final money judgments." *Gick*, 1991 WL 119153 at *3 (citing *Lafayette Dial*, 92 B.R. at 799–800.) The court considered orders lift-

---

3. *Wedgewood* and a number of other cases recognize that the bankruptcy court may, under § 105, reinstate a stay in bankruptcy that has lapsed by the court's inadvertence under

§ 362(e). *See* 878 F.2d at 701. Since this did not occur here, I do not discuss this line of authority.

ing the stay under § 362(d)(2) to be even more analogous to an injunction. Thus, it concluded that it had the authority under § 105(a)

> to enjoin a creditor from proceeding against the debtor or property of the bankruptcy estate following the entry of a decision on the merits relieving the creditor of the automatic stay. This opportunity does not, however, allow a party to relitigate issues that have previously been determined. Only proof of a substantial change in circumstances will justify changing what has been decreed.

*Id.* at *3 to *4; *see also Goldome Realty Credit Corp. v. Walls (In re Walls),* 91 B.R. 518 (Bankr.E.D.Mo.1988) (granting debtor's motion to reinstate stay under § 105).

Consequently, under the reasoning of *Gick* and *Smith,* the bankruptcy court in this instance did not abuse its power under § 105 by granting the Committee's motion to reimpose the stay. The court applied the proper test in determining whether to grant the motion, examining the four factors outlined in *Smith* essential to § 105 injunctive relief. Since Chrysler makes no argument that the court's factual findings on this score were in error, the bankruptcy court's judgment is AFFIRMED.