**In re WHITAKER, Jonathan R. Whitaker, Angie T., Debtors.**

**Whitaker, Jonathan R. Whitaker, Angie T., Debtors, Movant,**

v.

**Baxter, Barnee, Chapter 13 Trustee, Respondent.**

No. 05–14169.

United States Bankruptcy Court, S.D. Georgia, Augusta Division.

April 20, 2006.

G. Scott Buff, Augusta, GA, for Debtors.

## *ORDER*

JOHN S. DALIS, Bankruptcy Judge.

By motion filed January 17, 2006, the debtors Jonathan and Angie Whitaker (the "Debtors" or "Movants") seek to reinstate the automatic stay of 11 U.S.C. § 362(a). The Debtors seek this relief pursuant to § 362(c)(4) of the Bankruptcy Code.[1] The Debtors are not entitled to a reinstatement of the automatic stay (the "stay") under

that subsection. Nor does subsection 362(c)(3)(B) authorize its reinstatement.[2] Instead, I rely on the authority conferred by § 105(a) of the Bankruptcy Code to order the stay reinstated as to all creditors.[3] I do not employ § 105 lightly, but only to "prevent an abuse of process," that is impermissibly severe.[4]

Jurisdiction over these matters is proper under 28 U.S.C. § 157(b)(2)(G). Venue is appropriate under 28 U.S.C. § 1409(a).

---

1. As to debtors who have had "2 or more" cases dismissed in the preceding 1–year period, 11 U.S.C. § 362(c)(4)(B) provides:

   [I]f, within 30 days after the filing of the later case, a party in interest requests the court may order the stay to take effect in the case as to any and all creditors (subject to such conditions or limitations as the court may impose), after notice and a hearing, only if the party in interest demonstrates that the filing of the later case is in good faith as to the creditors to be stayed; . . .

2. As to debtors who have had only one case dismissed in the preceding 1–year period, 11 U.S.C. § 362(c)(3)(B) provides:

   [O]n the motion of a party in interest for continuation of the automatic stay and upon notice and a hearing, the court may extend the stay in particular cases as to any or all creditors (subject to such conditions or limitations as the court may impose) after notice and a hearing completed before the expiration of the 30–day period only if the party in interest demonstrates that the filing of the later case is in good faith as to the creditors to be stayed; . . .

3. 11 U.S.C. § 105(a) provides:

   The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

4. Section 362(c) raises compelling issues of due process and equal protection under the United States Constitution. The Movants

have not raised the constitutional issues, and only an Article III court has authority to declare an act of Congress unconstitutional. *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 57–76, 102 S.Ct. 2858, 2864–74, 73 L.Ed.2d 598, 606–18 (1982). I raise these issues only to demonstrate the "abuse of process" §§ 362(c)(3) & (4) invite. *See* 11 U.S.C. § 105(a).

Because § 362(c)(3)(B) requires that "notice [to all creditors] and a hearing be completed before the expiration of the 30–day period [from the filing date]," it creates unprecedented requirements of process that burden the court and the creditors effected, no less than the debtor. Nowhere else does the Bankruptcy Code condition a right or privilege on a party's ability to ensure a hearing with notices to so many interested parties within so brief a period of time.

Given the administrative difficulties of providing timely notice to all creditors of the bankruptcy estate, the actual window in which the hearing may be set is considerably less than thirty days. Depending on the timeliness of the motion, the notice required, and the available space on the docket calendar, it may be as few as two days or less. It may be impossible, as in this case.

When bankruptcy courts hear motions to alter the § 362 stay, the debtor and other parties have property interests sufficient to trigger a Fifth Amendment right to procedural due process. Normally, hearings require a minimum of 20 days notice. F.R.B.P.2002(a). However, where there is cause shown, a court may reduce this requirement. F.R.B.P. 9006(c)(1). Section 362(c)(3)(B) motions nearly always create a need for expedited process. Nevertheless, notice must be sufficient to provide due process to all interested parties. With regard to § 362(c) motions,

other courts have held that as much as 16 days notice to creditors violates their due process rights. *In re Taylor*, 334 B.R. 660 (Bankr.D.Minn.2005) (5 or 8 days notice is insufficient process); *In re Wilson et al.*, 336 B.R. 338 (Bankr.E.D.Tenn.2005) (9 or 16 days notice is insufficient process).

Since all parties' due process rights must be satisfied within a 30–day window, § 362(c)(3)(B) requires the moving party— usually, though not necessarily, the debtor— to have near perfect timing. It is not enough that the movant can demonstrate by clear and convincing evidence that the debtor filed her most recent case in good faith. The movant must ensure that the required hearing is completed in time. However, this is not within the movant's proximate control. Besides the usual reliance on the diligence of counsel, the movant must rely on the Bankruptcy Clerk's ability to schedule the hearing and serve interested parties. Not the movant, but rather the court is the gatekeeper who determines when hearings may be set. This removes control from the party affected. It also places a severe burden on court administrators. They are required to treat § 362(c)(3)(B) motions as urgent priorities. In many cases, this has required the Bankruptcy Clerk to serve notices by hand at considerable public expense.

The Supreme Court relies on a balancing test to determine whether a procedure provides constitutional due process:

> [D]ue process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18, 33 (1976).

Generally, the Government's interest in administrative efficiency counter-balances the private interests affected and the risks of erroneous deprivation. *Mathews*, 424 U.S. 319, 347–49, 96 S.Ct. 893, 909–910, 47 L.Ed.2d 18, 41–42; *see also Grayden v. Rhodes*, 345 F.3d 1225, 1233–37 (11th Cir.2003) That is not the case here. With respect to § 362(c)(3)(B), the Government's fiscal and administrative burden would be substantially reduced if hearings were permitted beyond the statute's "30–day period."

Were this insufficient to raise serious concerns over its constitutionality, §§ 362(c)(3) & (4) also raise an issue of equal protection. Although the equal protection clause of the Fourteenth Amendment specifically applies to acts of the states, the Supreme Court recognizes an inferred right to equal protection under the Fifth Amendment. *Bolling v. Sharpe et al.*, 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884, 886 (1954). The Supreme Court has held that with regard to bankruptcy discharges, "the applicable standard in measuring the propriety of Congress' classification, is that of rational justification." *United States v. Kras*, 409 U.S. 434, 446, 93 S.Ct. 631, 638, 34 L.Ed.2d 626, 636 (1973). Arguably, a greater degree of protection is required to safeguard the various property interests preserved by the automatic stay. Not just the debtor, but also the secured and unsecured creditors rely on the estate's preservation for the orderly distribution of assets. All of these parties are entitled to due process.

Even simply applying the standard of rational justification, the classification created by § 362(c) is troublesome. The statute separates debtors who file more than a single case in a one-year period into two classes: one-time repeat filers subject to § 362(c)(3) and multiple repeat filers subject to § 362(c)(4). For no apparent reason, § 362(c) creates different burdens of notice for these two classes.

Mysteriously, the due process predicament created by § 362(c)(3)(B) only occurs if the debtor has had just one case dismissed in the past year, but not if the debtor has repeatedly re-filed. If an individual debtor has had "2 or more... cases... pending within the previous year but were dismissed," a hearing is required to impose the automatic stay, but there is no fixed period by which it must be completed. 11 U.S.C. § 362(c)(4)(A) & (B). The statute only requires that "within 30 days [from the petition date] ... a party in interest *requests*" the relief. *Id*. The hearing may be held at some later, unspecified time.

Because the automatic stay provided to single-repeat filers is temporary, there may be some justification for more burdensome notice and hearing requirements to *extend* the stay before it expires. However, there is no rational justification to deny first-time repeat filers the same process to *impose* the stay that BAPCPA gives to multiple repeat filers. To deny first-time repeat filers an equivalent pro-

## FACTS

The Debtors filed their present case within a year of the dismissal of their only previous case, no. 03–12784, also a joint chapter 13 plan. They had filed their prior case on July 25, 2003, and it was dismissed November 5, 2005. On December 21, 2005, they filed this case. The automatic stay commenced on the filing date, but terminated by operation of law 30 days later. *See* 11 U.S.C. § 362(c)(3)(A).[5] Twenty-seven (27) days after filing this case, the Debtors filed this motion. Even while the stay was still in effect, they moved this court to "order the stay to take effect in this case as to... all creditors."[6]

All creditors and the chapter 13 trustee were served with the motion. None filed a response. A hearing was held on February 13, 2006, fifty-four (54) days after the petition date. No creditors appeared. At the hearing, the Debtors presented evidence that they had filed their most recent case in good faith. Based on the evidence presented at the hearing, I determined that they met the applicable burden of proof under 11 U.S.C. § 362(c)(3)(C).[7]

By clear and convincing evidence, these Debtors rebut the statutory presumption

---

cess subjects them and their creditors to greater "risks of an erroneous deprivation" than are applied to multiple repeat filers and their creditors. *Mathews v. Eldridge*, 424 U.S. 319, at 335, 96 S.Ct. 893, 47 L.Ed.2d 18.

5. 11 U.S.C. § 362(c)(3)(A) provides:

> ...if a single or joint case is filed by or against [a] debtor who is an individual in a case under chapter 7, 11, or 13, and if a single or joint case of the debtor was pending within the preceding 1–year period but was dismissed, other than a case filed under a chapter other than chapter 7 after dismissal under section 707(b)—
>
> (A) the stay under subsection (a) with respect to any action taken with respect to a debt or property securing such debt or with respect to any lease shall terminate with respect to the debtor on the 30th day after the filing of the later case;

6. 11 U.S.C. § 362(c)(4)(B)(reprinted *supra* note 1).

7. 11 U.S.C. § 362(c)(3)(C) provides that:

> (C) for purposes of subparagraph (B) [§ 362(c)(3)(B)], a case is presumptively filed not in good faith (but such presumption may be rebutted by clear and convincing evidence to the contrary)—
> (i) as to all creditors, if—
> (I) more than 1 previous case under any chapters 7, 11, and 13 in which the individual was a debtor was pending within the preceding 1–year period;

> (II) a previous case under any chapters 7, 11, and 13 in which the individual was a debtor was dismissed within such 1–year period, after the debtor failed to—
> (aa) file or amend the petition or other documents as required by this title or the court without substantial excuse (but mere inadvertence or negligence shall not be a substantial excuse unless the dismissal was caused by the negligence of the debtor's attorney);
> (bb) provide adequate protection as ordered by the court; or
> (cc) perform the terms of a plan confirmed by the court; or
> (III) there has not been a substantial change in the financial or personal affairs of the debtor since the dismissal of the next most previous case under chapter 7, 11, or 13 or any other reason to conclude that the later case will [not] [*sic*]* be concluded—
> (aa) if a case under chapter 7, with a discharge; or
> (bb) if a case under chapters 11 or 13, with a confirmed plan that will be fully performed; and
> (ii) as to any creditor that commenced an action under subsection (d) in a previous case in which the individual was a debtor if, as of the date of dismissal of such case, that action was still pending or has been resolved by terminating, conditioning, or limiting the stay as to actions of such creditor...

*Were § 362(c)(3)(C) not sufficiently complicated, it also contains this obvious scrivener's error; compare the otherwise identical lan-

that they filed their present case "not in good faith." The Debtors are not abusing the Bankruptcy Code by refiling. After dutifully adhering to their first chapter 13 plan, which had lasted 16 months, the Whitakers faced an unexpected impediment to completing their chapter 13 plan: Jonathan Whitaker was laid off. At the time, Angie Whitaker was devoting her time to taking care of her ill father and the Whitaker's three school-age children. Before they filed this case, both Debtors established steady employment. Their current plan provides for a 100% dividend to unsecured creditors.

Nevertheless, for the reasons set forth here, I may not rely on § 362(c)(3)(B) to "extend the stay." Nor do I have authority under § 362(c)(4)(B) to "order the stay to take effect." By their plain language, neither of those provisions apply to the Debtors. They have no recourse under any specific statute to move this court to reimpose the stay.

### THE AUTOMATIC STAY AS APPLIED TO REPEAT FILERS

Cases in this same posture have recurred regularly on this court docket's since the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) became effective on October 17, 2005. That Act established fundamental changes to the Bankruptcy Code, including numerous changes to the automatic stay provisions in 11 U.S.C. § 362.

Traditionally, the automatic stay has served to "prevent dismemberment of the [bankruptcy] estate and insure its orderly distribution." *SEC v. First Financial*

*Group*, 645 F.2d 429, 439 (5th Cir.1981), *citing* S. Rep. No. 95–989, 95th Cong., 2d Sess. 50 (1978); H.R.Rep. No. 95–595, 95th Cong., 2d Sess. 341 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5836, 5963, 6297, 6298. In that capacity, the automatic stay serves the interests of both the debtor and the creditors of the bankruptcy estate. For the debtor, it provides a "breathing spell" by "stopping all collection efforts, all harassment, and all foreclosure actions." S. Rep. No 95–989, 95th Cong.2d Sess. 54–55 (1978); H.R. Rep. No 95–595, 95th Cong., 1st Sess. 340 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5840, 5841, 5963, 6296, 6297. However, the stay also serves the interest of creditors, insofar as it "eliminate[s] the impetus for a race of diligence by fast-acting creditors." *SEC v. First Financial Group*, at 439. The stay ensures that assets are distributed according to the order of priorities established by Congress.

The BAPCPA amends the stay provisions with respect to individual debtors who file new cases within a year of the dismissal of their previous case or cases. For individual debtors who have had just one previous case dismissed in the preceding year, the automatic stay has a limited duration of 30 days.[8] For convenience, I will refer to such debtors as "one-time repeat filers."

The Bankruptcy Code clearly distinguishes them from debtors who have had "2 or more single or joint cases... pending within the previous year but were dismissed."[9] Throughout this decision, I refer to these debtors as "multiple repeat

---

guage in § 362(c)(4)(D)(i)(III), reprinted *infra* note 10.

**8.** 11 U.S.C. § 362(c)(3)(A) (reprinted *supra* note 5).

**9.** 11 U.S.C. § 362(c)(4)(A)(i) provides:

if a single or joint case is filed by or against a debtor who is an individual under this title, and if 2 or more single or joint cases of the debtor were pending within the previous year but were dismissed, other than a case refiled under section 707(b); the stay

filers." For them, the stay does not go into effect automatically.

Most individual debtors who file a new case within a year of having had a previous case (or cases) dismissed will be subject to a statutory presumption that the most recent case is not filed in good faith.[10] However, "a party in interest" may rebut this presumption. In which event, the court "may extend the stay" or "may order the stay to take effect" as to any or all creditors (as to one-time repeat and multiple repeat filers, respectively).[11]

■ However, the Debtors are no longer entitled to the § 362(c)(3)(B) safe harbor. Its applicable window is very narrow, requiring "notice and a hearing [be] com-

pleted before the expiration of the 30–day period [from the date the petition was filed]." [12]

The Whitakers' problem, quite simply, is that their counsel failed to file a motion to extend the stay quickly enough. This Motion to Reinstate the Automatic Stay was filed 27 days after the filing date—just three days before the expiration of the 30–day period. As a result, the required notice and a hearing could not be completed in time.

■ Presumably, Debtors' counsel apprised his clients' situation, since this motion cites § 362(c)(4) as authority for reinstating the stay. However, that statute is also inapplicable.

---

under subsection (a) shall not go into effect upon the filing of the later case; and...

10. The statutes that trigger the "not in good faith" presumption are quite broad. *See* 11 U.S.C. § 362(c)(3)(C)(I)(reprinted *supra* note 7); *compare* 11 U.S.C. § 362(c)(4)(D), which provides:

(D) for purposes of subparagraph (B) [§ 362(c)(4)(B)], a case is presumptively filed not in good faith (but such presumption may be rebutted by clear and convincing evidence to the contrary)—
(i) as to all creditors, if—
(I) 2 or more previous cases under this title in which the individual was a debtor were pending within the preceding 1–year period.
(II) a previous case under this title in which the individual was a debtor was dismissed within the time period stated in this paragraph after the debtor failed to file or amend the petition or other documents as required by this title or the court without substantial excuse (but mere inadvertence or negligence shall not be substantial excuse unless the dismissal was caused by the negligence of the debtor's attorney), failed to provide adequate protection as ordered by the court; or failed to perform the terms of a plan confirmed by the court; or
(III) there has not been a substantial change in the financial or personal affairs of the debtor since the dismissal of the

next most previous case under this title, or any other reason to conclude that the later case will not be concluded if a case under chapter 7, with a discharge, and if a case under chapter 11 or 13, with a confirmed plan that will be fully performed; or
(ii) as to any creditor that commenced an action under subsection (d) in a previous case in which the individual was a debtor if, as of the date of dismissal of such case, such action was still pending or has been resolved by terminating, conditioning, or limiting the stay as to such action of such creditor...

11. *See, respectively*, 11 U.S.C. §§ 362(c)(3)(B)(reprinted *supra* at note 2) & 362(c)(4)(B)(reprinted *supra* note 1).

12. *See* 11 U.S.C. § 362(c)(3)(B)(reprinted *supra* note 2).

The "30–day period" refers to two related, but nevertheless separate events. Firstly, as to first-time repeat filers, the automatic stay has a duration of thirty days. Section 362(c)(3)(A) provides that, the stay "shall terminate with respect to the debtor on the 30th day after the filing of the case." 11 U.S.C. § 362(c)(3)(A) (reprinted *supra* note 5). Secondly, § 362(c)(3)(B) proscribes the court's authority to extend the stay. It provides that "the court may extend the stay... after notice and a hearing completed before the expira-

It is true that § 362(c)(4)(B) provides repeat filers an opportunity to protect the estate under § 362. Unlike § 362(c)(3)(B), it does not require that notice and a hearing be completed within 30 days of the filing of the petition. The court may order the stay to take effect "if within 30 days after the filing of the later case, a party in interest requests [it]."[13] Although notice and a hearing are required, no limitation is fixed, and so they may occur outside of a thirty-day period.

The problem is that this separate safe harbor is only available to multiple repeat filers.[14] The Whitakers are ineligible for the simple reason that they filed just one prior case in the previous year. The very brief safe harbor provided to one-time repeat filers has passed. The Debtors now wish to move this court using the extended safe harbor separately reserved for multiple repeat filers. This they may not do. The plain language of § 362(c)(4) does not apply to them.

### THE PLAIN MEANING RULE APPLIED TO § 362(c)(4)

In construing a statute, "it is . . . axiomatic that [my] first step 'is to determine whether the language at issue has a plain and unambiguous meaning.'" *D'Angelo v. ConAgra Foods*, 422 F.3d 1220, 1235 (11th Cir.2005) *quoting Robinson v. Shell Oil Co.*, 519 U.S. 337, 340, 117 S.Ct. 843, 846, 136 L.Ed.2d 808, 813 (1997). "[T]he preeminent canon of statutory interpretation requires [me] to 'presume that [the] legislature says in a statute what it means and means in a statute what it says there.'" *BedRoc Ltd., LLC v. United*

*States,* 541 U.S. 176, 183, 124 S.Ct. 1587, 1593, 158 L.Ed.2d 338, 345 (2004) *quoting Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253–54, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391, 397–98 (1992). This inquiry requires me to "begin[ ] with the statutory text, and end[ ] there as well if the text is unambiguous." *Id.*

By its plain and unambiguous language, section 362(c)(4) applies only to multiple repeat filers. It is only triggered "if a single or joint case is filed by or against a debtor who is an individual under this title, and *if 2 or more single or joint cases* of the debtor were pending within the previous year but were dismissed."[15]

The relief available under § 362(c)(4)(B) also indicates its limited application to multiple repeat filers: "the court may order the stay to take effect."[16] This implies that the stay is otherwise nonexistent, which makes sense since § 362(c)(4)(A)(i) states that the "stay does not go into effect." Contrast this with § 362(c)(3)(B), which states that "the court may extend the stay."[17] This indicates that the stay is present only temporarily, as is the case for one-time repeat filers.

### THE INAPPLICABILITY OF § 362(c)(4)(B) TO ONE–TIME RE-PEAT FILERS

The Bankruptcy Code, as amended by BAPCPA, divides debtors who file more than one case in a one-year period into two classes: first-time repeat filers described in § 362(c)(3), and multiple repeat filers

---

tion of the 30–day period." 11 U.S.C. § 362(c)(3)(B) (reprinted *supra* note 2).

**13.** 11 U.S.C. § 362(c)(3)(B)(emphasis added)(reprinted *supra* note 2).

**14.** 11 U.S.C. § 362(c)(4)(A)(i)(reprinted *supra* note 9).

**15.** 11 U.S.C. § 362(c)(4)(A)(i)(emphasis added).

**16.** 11 U.S.C. § 362(c)(4)(B)(reprinted *supra* note 1).

**17.** 11 U.S.C. § 362(c)(3)(B)(reprinted *supra* note 2).

described in § 362(c)(4). Each class has its own applicable safe harbor provision.[18]

However, at least one court has held that one-time repeat filers are entitled to the § 362(c)(4) safe harbor. *In re Toro–Arcila,* 334 B.R. 224 (Bankr.S.D.Tex.2005). I find the arguments supporting this holding unpersuasive. *In re Toro–Arcila* states that if § 362(c)(4)(B) applied only to multiple repeat filers, then virtually all of § 362(c)(4)(D) would be "meaningless surplusage." *Id.* at 227. I disagree.

Section 362(c)(4)(D) describes the circumstances in which there is a presumptive absence of good faith.[19] It lists three *disjunctive* factors that create such a presumption. However, first among these is simply: "if . . . 2 or more previous cases under this title in which the individual was a debtor were pending within the 1–year period."[20] Plainly, *any* debtor described under § 362(c)(4)(A) (*i.e.,* any multiple repeat filer) is automatically presumed to have filed "not in good faith."[21]

According to *In re Toro–Arcila,* a court might therefore dispense with any further consideration of the other independent tests of bad faith listed in § 362(c)(4)(D)(i)(II) & (III). But were that so, § 362(c)(4)(D) would be largely superfluous. According to *In re Toro–Arcila,* that would violate "'a cardinal principal of statutory construction' that 'a statute ought, upon the whole, . . . be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" *Id., quoting TRW, Inc. v. Andrews,* 534 U.S. 19, 31, 122 S.Ct. 441, 449, 151 L.Ed.2d 339, 350 (2001)(*quoting Duncan v. Walker,* 533 U.S. 167, 174, 121 S.Ct. 2120, 2125, 150 L.Ed.2d 251, 259 (2001)).

According to the opinion, not just one word would be rendered superfluous, but no less than all 278 words of § 362(c)(4)(D). *In re Toro–Arcila,* at 227 n. 2 and accompanying text. To rectify this purported surplusage, the opinion holds that debtors described in § 362(c)(3)(A) are entitled to the safe harbor in subparagraph (c)(4)(B). In its own words, this opinion "creates a statutory structure where certain provisions of § 362(c)(4) apply to §§ 362(c)(3) and (4)." *In re Toro–Arcila,* at 228.

There is no basis for this construction. The customary separation of distinct subparagraphs does not render § 362(c)(4)(D) meaningless surplusage. Rather, the disjunctive factors listed in § 362(c)(4)(D) place consecutive burdens on the multiple repeat filer to establish good faith.

If an interested party moves for imposition of the stay under section 362(c)(4)(B), then the burden of rebutting the presumption of filing "not in good faith" arises automatically, since "2 or more cases under this title in which the individual was a debtor were pending in the 1–year period."[22]

The movant cannot fully meet this burden unless she provides a "substantial excuse" for failing to file or amend documents required in previous cases.[23]

The burden persists at least until the debtor demonstrates "a substantial change

---

**18.** *See, respectively,* 11 U.S.C. §§ 362(c)(4)(B)(reprinted *supra* note 1) & 362(c)(3)(B)(reprinted *supra* note 2).

**19.** 11 U.S.C. § 362(c)(4)(D)(reprinted *supra* note 10).

**20.** 11 U.S.C. § 362(c)(4)(D)(i)(I).

**21.** 11 U.S.C. § 362(c)(4)(A)(i)(reprinted *supra* note 9).

**22.** 11 U.S.C. § 362(c)(4)(D)(i)(I).

**23.** 11 U.S.C. § 362(c)(4)(D)(i)(II)(reprinted *supra* note 10).

in [her] financial or personal affairs" sufficient to indicate that either a chapter 7 discharge is permissible or "a confirmed plan . . . will be fully performed."[24]

Lastly, an additional burden must be met with respect to each creditor who moved to lift the stay in a previous case.[25]

The statute thus serves hybrid roles. As *In re Toro–Arcila* recognizes, "[s]ection 362(c)(4)(D) creates a presumption that certain cases are not filed in good faith." *In re Toro–Arcila,* at 226–27. In this capacity, the statute casts its net so wide that effectively all cases by multiple repeat filers are "presumptively filed not in good faith." But the statute also establishes how "such presumption may be rebutted." Congress' use of the disjunctive "or" confers the necessary flexibility to provide separate, sequential burdens for the different kinds of failures that some repeat filers experienced in their previous cases.

### DETERMINING "GOOD FAITH" UNDER § 362(c)(3)(B)

■ Based on the evidence presented at the hearing on February 13, I find that the Debtors do rebut, by clear and convincing evidence, the statutory presumption that they filed their most recent case "not in good faith."[26] In other words, they "demonstrate[ ] that the filing of the later case is in good faith to the creditors to be stayed."[27]

The appropriate test for rebutting the presumption of "not in good faith" (*i.e.,* bad faith) is provided in § 362(c)(3)(C). Like § 362(c)(4)(D), this statute does not simply state the various circumstances that trigger a presumption of bad faith. In several places, it also indicates how those presumptions may be rebutted.

If the debtor "failed to file or amend the previous petition or other documents as required," she must now provide a "substantial excuse" for failing to do so.[28]

Also, as to each creditor who successfully moved to lift the stay in the prior case, there is an additional, presumably weightier, burden that the movant must meet, although the statute does not establish a definitive test.[29]

■ However, the chief means of rebutting the presumption of bad faith requires the movant to establish "a substantial change in the financial or personal affairs of the debtor . . . or any other reason to conclude" that the instant case will be successful.[30] If the instant case is one under chapter 7, a discharge must now be permissible.[31] If it is a case under chapters 11 or 13, there must be some substantial change indicating that a "confirmed plan . . . will be fully performed."[32]

■ Because I find that the statute provides the evidentiary burden required to rebut the presumption of bad faith, I do

---

24. 11 U.S.C. § 362(c)(4)(D)(i)(III)(reprinted *supra* note 10).

25. 11 U.S.C. § 362(c)(4)(D)(ii)(reprinted *supra* note 10).

26. 11 U.S.C. § 362(c)(3)(C)(reprinted *supra* note 7).

27. 11 U.S.C. § 362(c)(3)(B)(reprinted *supra* note 2).

28. 11 U.S.C. § 362(c)(3)(C)(i)(II)(aa)(reprinted *supra* note 7).

29. 11 U.S.C. § 362(c)(3)(C)(ii)(reprinted *supra* note 7).

30. 11 U.S.C. § 362(c)(3)(C)(III)(reprinted *supra* note 7).

31. 11 U.S.C. § 362(c)(3)(C)(III)(aa)(reprinted *supra* note 7).

32. 11 U.S.C. § 362(c)(3)(C)(III)(bb)(reprinted *supra* note 7).

not apply the tests of good faith developed under § 1325(a) (good faith proposal of a chapter 13 plan for the purpose of confirmation) or § 1307(c) (dismissal or conversion of a chapter 13 case for cause including lack of good faith). *See, respectively, Kitchens v. Ga. RR Bank & Trust Co. (In re Kitchens)*, 702 F.2d 885, 888–89 (11th Cir.1983); *Leavitt v. Soto (In re Leavitt)*, 209 B.R. 935, 939 (9th Cir.1997).

Not only are these tests superceded by the language of § 362(c)(3)(C), their application here would result in considerable confusion. They deal with very different provisions of the Bankruptcy Code, generally implemented later in the case. *But see In re Montoya*, 333 B.R. 449, 458 nn. 14–16 *and accompanying text* (Bankr. D.Utah 2005); *In re Ball*, 336 B.R. 268 (Bankr.M.D.N.C.2006); *In re Galanis*, 334 B.R. 685 (Bankr.D.Utah 2005). These opinions all struggle to identify the "totality of the circumstances" factors that might apply, discard those that obviously cannot, and also add new factors not indicated by § 362(c)(3).

The better approach simply requires the Debtors to meet the dictates of the statute. The uncontested evidence presented by the Debtors, and supported by the chapter 13 trustee, establishes that their first case failed because Mr. Whitaker lost his job. As a result the Debtors "failed to perform the terms of a plan confirmed by the court."[33] Between the dismissal of their previous case and filing their instant case, both of the Debtors have found employment. Mr. Whitaker has returned to work at his previous employer, where other than

his brief lapse, he has worked for five years. Ms. Whitaker currently works part-time at a video store. Their income appears sufficient to support a plan that will provide a 100% dividend to unsecured creditors.

Based on this evidence, I find that there has "been a substantial change in the financial or personal affairs of the debtor[s] since the dismissal of the next most previous case" sufficient "to conclude that the later case [under chapter 13] will be concluded... with a confirmed plan that will be fully performed."[34] The other burdens established by § 362(c)(3)(C) are not applicable here.

Therefore, the Debtors, by clear and convincing evidence, rebut the presumption that they filed their most recent case "not in good faith."[35] Stated otherwise, they "demonstrate[ ] that the filing of the later case is in good faith to the creditors to be stayed."[36]

### *RELIANCE ON § 105 TO REIMPOSE THE § 362 STAY*

■ With respect to first-time repeat filers, there is no specific grant of authority to reimpose the stay once it has lapsed under § 362(c)(3)(A). Although the Debtors meet the statutory burden of good faith, their opportunity to use the § 362(c)(3)(B) safe harbor has passed. My only authority for reinstating the stay is to use the equitable powers conferred by § 105(a).[37]

■ The powers conferred by § 105(a) are unambiguously broad. Courts else-

---

**33.** 11 U.S.C. § 362(c)(3)(i)(II)(cc)(reprinted *supra* note 7).

**34.** 11 U.S.C. § 362(c)(3)(C)(i)(II)(reprinted *supra* note 7).

**35.** 11 U.S.C. § 362(c)(3)(C)(reprinted *supra* note 7).

**36.** 11 U.S.C. § 362(c)(3)(B)(reprinted *supra* note 2).

**37.** 11 U.S.C. § 105(a)(reprinted *supra* note 3).

where have held that the statute grants authority to reimpose the stay if the court has lifted the stay under § 362(d) or after the stay has lapsed by operation of law— typically by § 362(e). *Chrysler Capital Corp. v. Official Comm. of Unsecured Creditors (In re Twenver)*, 149 B.R. 950, 953–54 (D.Colo.1993); *In re Bogosian*, 112 B.R. 2, 4 (Bankr.D.R.I.1990); *Smith v. Citifed (In re Smith)*, 111 B.R. 102, 104–05 (Bankr.E.D.Pa.1990); *Wedgewood Investment Fund, Ltd. v. Wedgewood Realty Group, Ltd. (In re Wedgewood Realty Group, Ltd.)*, 878 F.2d 693, 701 (3rd Cir. 1989); *ML Barge Pool VII Partners— Series A v. United States (In re ML Barge Pool VII Partners, et al.)*, 71 B.R. 161, 164, ¶ 8 (E.D.Mo.1987); *In re Clark*, 69 B.R. 885, 893 (Bankr.E.D.Pa.1987); *In re Kozak Farms Inc.*, 47 B.R. 399, 402–03 (W.D.Mo. 1985); *In re McNeely*, 51 B.R. 816, 821 (Bankr.D.Utah 1985); *Explorer Drilling Co. v. Martin Exploration Co. (In re Martin Exploration Company)*, 731 F.2d 1210, 1214 (5th Cir.1984); *Bank Hapoalim B.M., Chicago Branch v. E.L.I., Ltd.*, 42 B.R. 376, 378 (N.D.Ill.1984); *In re Rolanco, Inc.*, 43 B.R. 150, 152–53 (Bankr. E.D.Mo.1984); *In re Small*, 38 B.R. 143, 147–48 (Bankr.D.Md.1984); *In re Pirsig Farms, Inc.*, 41 B.R. 835, 835 (Bankr. D.Minn.1984); *In re Brusich & St. Pedro Jewelers, Inc.*, 28 B.R. 545, 549–50 (Bankr. E.D.Pa.1983); *In re Wilmette Partners*, 34 B.R. 958, 961–62 (Bankr.N.D.Ill.1983); *In re Codesco, Inc.*, 24 B.R. 746, 751 (Bankr. S.D.N.Y.1982). *Contra, Canter v. Canter (In re Canter)*, 299 F.3d 1150, 1155 n. 1 (9th Cir.2002); *citing Andreiu v. Reno*, 223 F.3d 1111, 1121 n. 4 (9th Cir.2000) (The addition by BAPCPA of specific provisions providing for the reinstatement of the automatic stay places in question the viability of the Ninth Circuit precedents.)

Section 105(a) grants me the authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [Title 11]."[38] Under the circumstances and facts of this case, I find that re-imposition of the automatic stay is appropriate, and necessary to ensure an orderly payment to creditors under the Debtors' chapter 13 plan. In granting the Debtors' request to reimpose the stay, I am influenced by a variety of factors.

First, I am reluctant to deprive the Whitakers of a decision on the merits, since they can clearly and convincingly carry their statutory burden under § 362(c)(3)(B) & (C). *See Mitchell v. Brown & Williamson Tobacco Co.*, 294 F.3d 1309, 1316–17 (11th Cir.2002), *quoting Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir.1985) (stating the "usual preference that cases be heard on the merits").

Secondly, notice of this motion was served on the chapter 13 trustee and all creditors of the estate. None objected or even filed a response.

Thirdly, I am concerned that parties not suffer merely because of the inadvertence of their counsel. Sections 362(c)(3)(C)(i)(II)(aa) & 362(c)(4)(D)(i)(II) indicate that "negligence by the debtor's attorney" does not require "substantial excuse" by the party seeking to establish the good faith of a repeat filing.

The Debtors might just dismiss this case, file another, and move for imposition of the stay under § 362(c)(4)(B). They could then submit evidence that their counsel failed to ensure a § 362(c)(3)(B) hearing within the required 30–day period. *See* 11 U.S.C. § 362(c)(4)(D)(i)(II). The *In re Toro–Arcila* court also considered this strategy, noting that "Congress could not have meant to create such gamesmanship."

---

**38.** 11 U.S.C. § 105(a)(reprinted *supra* note 3).

*In re Toro–Arcila,* at 228–29. Indeed, this would only further prolong payment to creditors and burden the debtors with unnecessary expense.

Applying the traditional test for injunctive relief, the Movants demonstrate that they merit relief. *See McDonald's Corp. v. Robertson,* 147 F.3d 1301, 1306 (11th Cir.1998); *In re Wedgewood Realty Group, Ltd.,* 878 F.2d 693, 701 (3rd Cir. 1989). If the stay is not imposed, both they and the bankruptcy estate would be susceptible to irreparable injury. In this case, the creditors also will benefit from the stay's reimposition. Because the debtors' plan provides a 100% dividend to unsecured creditors, imposing the stay will permit the orderly payment of claims in full. It is in the public interest that creditors be paid what is owed them in an orderly fashion. Furthermore, the creditors enjoined retain the usual means to move for relief from the stay under 11 U.S.C. § 362(d). The Movants have no equivalent fail-safe. The balance of hardships favors the Movants.

## ORDER

It is therefore ORDERED that the stay described at 11 U.S.C. § 362(a) is reimposed as to all creditors.