Robert LaPOINTE, Debtor.

TD Bank, N.A., Appellant,

v.

Robert LaPointe, Appellee.

BAP No. 13–029.
Bankruptcy No. 13–10688–BAH.

United States Bankruptcy Appellate Panel
for the First Circuit.

Feb. 24, 2014.

Anthony J. Manhart, Esq., on brief, Portland, ME, for Appellant.

Kevin Chisholm, Esq., on brief, for Appellee.

Before FEENEY, TESTER, and FINKLE, United States Bankruptcy Appellate Panel Judges.

FEENEY, Bankruptcy Judge.

TD Bank, N.A. (the "Bank") appeals the bankruptcy court's order denying its motion for relief from the automatic stay to enforce its state law rights with respect to the debtor's residence. The Bank argues that the bankruptcy court erred in denying its motion because it had conducted a prepetition foreclosure sale of the debtor's residence, thereby divesting the debtor of any interest in the residence which would be property of the estate protected by the automatic stay. We agree and, therefore, we **REVERSE** the bankruptcy court's order denying the Bank's motion for relief from the automatic stay, and **REMAND** to the bankruptcy court for entry of an order granting the Bank's motion for relief from the automatic stay.

## BACKGROUND

The material facts of this case are undisputed. In May 2009, Robert LaPointe (the "Debtor") granted a mortgage on his residence to the Bank to secure a promissory note. Thereafter, the Debtor defaulted, and the Bank conducted a foreclosure auction on March 20, 2013. The Bank was the successful bidder at the auction and signed a memorandum of sale on that date. The next day, the Debtor filed a chapter 13 petition. The Bank did not record the foreclosure deed before the Debtor filed his bankruptcy petition.

In his chapter 13 plan, the Debtor proposed to make payments to the trustee of $278.00 for 60 months, for a total of $16,680.00.[1] With respect to the Bank's mortgage, the Debtor proposed to cure his mortgage default through the plan and reinstate the mortgage, as follows:

**5. SECURED CLAIMS (PRIMARY RESIDENCE)**

Residence located at: 75 Nutes Road, Milton, NH 03851

Debtor estimates the fair market value of such primary residence to be: $ 130,700.00

Since the debtor seeks to retain the collateral, and for the lien to remain in full force and effect, the claim will be treated in one of the following two manners:

( ) Outside the plan. The mortgage is current and will continue to be directly payable by the debtor.

OR

(×) The mortgage is not current. Regular postpetition payments will be made directly by the debtor and the prepetition arrearage only is to be paid through the plan, as follows:

| Mortgagee | Estimated Total Prepetition Arrearage |
|---|---|
| 1st TD Bank | $14,500.00 |
| 2nd TD Bank | $ 500.00 |
| 3rd_____ | _____ |

One month later, the Bank filed a motion for relief from the automatic stay so

---

1. Although the Debtor did not designate the plan as part of the record on appeal, we may take judicial notice of the bankruptcy court's docket and imaged papers when the parties do not supply a comprehensive record on appeal. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n. 9 (9th Cir. BAP 2003).

that it could record its deed and evict the Debtor from the property. As grounds, the Bank asserted that cause existed under § 362(d)[2] because, among other things, the foreclosure auction had extinguished all of the Debtor's interest in the property and, therefore, the property was not property of the estate. The Debtor objected, claiming that he still had an interest in the property as of the bankruptcy filing because the foreclosure deed had not been recorded. Citing *In re Beeman*, 235 B.R. 519 (Bankr.D.N.H.1999),[3] he argued that, under New Hampshire law, legal title of real property does not pass until the deed has been recorded and, therefore, as of the petition date, the foreclosure sale had not been completed and he still had a right to cure under § 1322(b) and (c).

The bankruptcy court held a hearing on May 22, 2013. After hearing arguments from the parties, the court concluded:

> ... [T]he language in [§ ] 1322(b) and (c) that refers to the sale being completed really means the entire transaction and not just the—whatever transaction exists as between the mortgagee and the debtor because otherwise no mortgagee would ever have to complete a sale by conveying title to the foreclosure sale purchaser because the sale, quote unquote, would already have been complete, except it isn't complete because the mortgagee is still in title—or is at least in theory, if not in fact. But the only person who isn't in title yet is the purchaser who bid at the auction.
>
> So, for that reason, I would find that the debtor does have a sufficient interest in the property to be able to proceed with

a Chapter 13 plan, and that would be cause to deny your motion for leave with respect to property of the estate issues.

The bankruptcy court entered an order denying the Bank's motion for relief from stay "without prejudice for the reasons set forth on the record this date." This appeal followed.

### *JURISDICTION*

■ Before addressing the merits of an appeal, the Panel must determine that it has jurisdiction, even if the litigants do not raise the issue. *See Boylan v. George E. Bumpus, Jr. Constr. Co. (In re George E. Bumpus, Jr. Constr. Co.)*, 226 B.R. 724, 725–26 (1st Cir. BAP 1998). The Panel has jurisdiction to hear appeals from: (1) final judgments, orders, and decrees; or (2) with leave of court, from certain interlocutory orders. 28 U.S.C. § 158(a); *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 645 (1st Cir. BAP 1998). "A decision is final if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Id.* at 646. An interlocutory order "'only decides some intervening matter pertaining to the cause, and ... requires further steps to be taken in order to enable the court to adjudicate the cause on the merits.'" *Id.* (quoting *In re Am. Colonial Broad. Corp.*, 758 F.2d 794, 801 (1st Cir.1985)).

■ While orders granting relief from the automatic stay are generally final and appealable, an order denying relief from stay is not final and appealable unless it completely resolves all issues between the

---

**2.** Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific statutory sections shall be to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. § 101, *et seq.*

**3.** As discussed later, *In re Beeman* involved the question of whether, under § 1322(c)(1), a chapter 13 debtor could cure a default on a mortgage note through his plan when the foreclosure auction occurred prior to the bankruptcy filing, but the seller had not yet recorded the foreclosure deed.

parties with respect to the matter for which relief from stay was sought. *See Raymond C. Green, Inc. v. DeGiacomo (In re Inofin, Inc.)*, 466 B.R. 170, 174 (1st Cir. BAP 2012); *see also United States v. Fleet Bank of Mass. (In re Calore Express Co.)*, 288 F.3d 22, 34–35 (1st Cir.2002); *Caterpillar Fin. Servs. Corp. v. Braunstein (In re Henriquez)*, 261 B.R. 67, 70 (1st Cir. BAP 2001). The order on appeal did not resolve all issues between the parties and, therefore, it is not final.

The Bank moved for leave to appeal, arguing that this case involves a controlling question of law because if the Debtor had an interest in the property as of the bankruptcy filing, he can cure the default and reinstate the note and the mortgage pursuant to §§ 1322 and 1325. It also argued that the question of whether the Debtor had an interest in the property as of the bankruptcy filing turns on the application of the New Hampshire foreclosure statute, and courts differ on the proper interpretation and application of that statute. Determining that the matter met the pertinent standards for interlocutory review, the Panel granted leave to appeal.

### STANDARD OF REVIEW

 Appellate courts apply the clearly erroneous standard to findings of fact and *de novo* review to conclusions of law. *See Lessard v. Wilton–Lyndeborough Coop. Sch. Dist.*, 592 F.3d 267, 269 (1st Cir.2010). Generally, the Panel reviews orders regarding relief from the automatic stay for abuse of discretion. *See Aguiar v. Interbay Funding, LLC (In re Aguiar)*, 311 B.R. 129, 132 (1st Cir. BAP 2004) (citing *Soares v. Brockton Credit Union (In re Soares)*, 107 F.3d 969, 973 (1st Cir.1997)). Issues of statutory interpretation are reviewed *de novo. See Ramos Rodriguez v. Naihomy (In re Ramos Rodriguez)*, 334 B.R. 754, 757 (1st Cir. BAP

2005) (citing *McMullen v. Sevigny (In re McMullen)*, 386 F.3d 320, 331 (1st Cir. 2004)). This appeal presents a question of law which the Panel will review *de novo.*

### DISCUSSION

### I. Applicable Law

 Section 362(a)(1) provides that the filing of a bankruptcy petition automatically stays all acts against a debtor and property of the bankruptcy estate, subject to limited exceptions. 11 U.S.C. § 362(a)(1). For property to be protected by the automatic stay, it must be property of the bankruptcy estate. *See* 11 U.S.C. § 362(c)(1); *Donarumo v. Furlong (In re Furlong)*, 660 F.3d 81, 89 (1st Cir.2011). Property of the bankruptcy estate includes all legal and equitable interests of the debtor in property as of the commencement of the case, subject to certain exceptions not applicable here. *See* 11 U.S.C. § 541(a)(1). Statutory or equitable rights of redemption are included in the concept of property of the estate under § 541. *See* 4 *Collier on Bankruptcy*, § 541.04[2] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2013). Generally, state law determines whether the debtor has any legal or equitable interest in property that is included in the bankruptcy estate, unless federal law requires a different result. *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *NTA, LLC v. Concourse Holding Co., LLC (In re NTA, LLC)*, 380 F.3d 523, 528 (1st Cir.2004).

We start with an analysis of the applicable state law—in this case, the New Hampshire foreclosure statute—and the redemption provisions set forth in the Bankruptcy Code.

### A. New Hampshire Foreclosure Law

N.H.Rev.Stat. Ann. §§ 479:25 and 26 set forth the requirements and procedures for

mortgagees to foreclose their mortgages upon default. The foreclosure in this case was conducted pursuant to a power of sale clause in the parties' mortgage agreement. N.H.Rev.Stat. Ann. §§ 479:25–28 govern powers of sale foreclosures, and provide that upon a mortgage default, a mortgagee, after providing proper notice and complying with other requirements, may schedule a sale of the subject property. *See* N.H.Rev.Stat. Ann. § 479:25. Within sixty days after the sale, the seller must record the foreclosure deed, a copy of the notice of the sale and the seller's accompanying affidavit in the registry of deeds. *See* N.H.Rev.Stat. Ann. § 479:26. The title to the premises then passes to the purchaser "free and clear of all interests and encumbrances which do not have priority over such mortgage." *Id.* The mortgagor's state law redemption rights are set forth in N.H.Rev.Stat. Ann. § 479:18, which provides: "All lands conveyed in mortgage may be redeemed by the mortgagor ... *before foreclosure.*" See N.H.Rev.Stat. Ann. 479:18 (emphasis added).

With respect to the right of redemption, the New Hampshire Supreme Court has held:

> The mortgagor does not have a right of redemption after foreclosure. RSA 479:18, :19 (1992). Even though legal title does not pass until the deed has been recorded, *see* RSA 479:26, II (1992), this rule does not change the fact that [the debtor] possessed neither a legal nor an equitable interest in the property once the auctioneer's hammer fell and the memorandum of sale was signed.

*Barrows v. Boles,* 141 N.H. 382, 393, 687 A.2d 979 (1996) (internal citations and quotations omitted).

## B. The Bankruptcy Code's Cure Provision–Section 1322

Section 1322 sets forth the mandatory and optional provisions for the treatment of creditors in a chapter 13 plan. Subsection 1322(b)(3) broadly permits the plan to "provide for the curing or waiving of any default" and subsection (b)(5) permits the plan to "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due." 11 U.S.C. § 1322(b)(3) and (5). Section 1322(c)(1) allows a debtor to cure his or her default under a mortgage, providing:

> Notwithstanding subsection (b)(2) and applicable nonbankruptcy law ... a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured ... *until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law; ...*

11 U.S.C. § 1322(c)(1) (emphasis added).

In *In re Beeman,* Judge Deasy explained § 1322(c)(1)'s history and purpose:

> Section 1322(c)(1) was added to the Bankruptcy Code in 1994.... Before 1994, there was some confusion as to when Chapter 13 debtors lost their right to cure and reinstate a home mortgage. Some courts had held that such a right was lost when a foreclosure auction was held. *See, e.g.,* Fed. *Land Bank of Louisville v. Glenn (In re Glenn),* 760 F.2d 1428 (6th Cir.1985), *cert. denied,* 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985); *In re Clark,* 738 F.2d 869 (7th Cir.1984), *cert. denied,* 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985). However, in 1987, the Court of Appeals for the Third Circuit held that a Chapter 13 debtor's right to cure and reinstate a

home mortgage was lost, pursuant to state law, upon entry of a foreclosure judgment, which occurred before the actual foreclosure auction. *See In re Roach,* 824 F.2d 1370 (3d Cir.1987). It is generally understood that Congress enacted § 1322(c)(1) in an effort to resolve this confusion and create a uniform standard. *See In re Crawford,* 232 B.R. 92, 95 (Bankr.N.D.Ohio 1999); *In re Tomlin,* 228 B.R. 916, 918 (Bankr. E.D.Ark.1999).

235 B.R. at 524; *see also Colon v. Option One Mortgage Corp.,* 319 F.3d 912, 917–18 (7th Cir.2003); *JPMorgan Chase Bank v. McKinney (In re McKinney),* 344 B.R. 1, 4–5 (Bankr.D.Me.2006); *In re Crichlow,* 322 B.R. 229, 232–33 (Bankr.D.Mass.2004). However, "[b]oth the statute and the legislative history, to the extent relied upon by courts that have found the statute ambiguous, have created a great deal more discussion than the intended clarification." *Crichlow,* 322 B.R. at 232–33 (noting that the legislative history refers to the "completion of a foreclosure sale under applicable nonbankruptcy law," and that the Senate version explains that the statute "will preempt conflicting State laws, and permit homeowners to present a plan to pay off their mortgage debt until the foreclosure sale actually occurs.").

Since the enactment of § 1322(c)(1), courts have disagreed over the meaning of the phrase "sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law," and several different approaches have emerged. One line of cases follows the "gavel rule," holding that the debtor's right to cure is cut off once the gavel falls at the foreclosure auction.[4] These courts generally agree that § 1322(c)(1) is clear and unambiguous, and that the term "foreclosure sale" describes "a single, discrete event, and not merely a step in a process culminating in the recordation and delivery of a deed." *In re Medaglia,* 402 B.R. 530, 533 (Bankr.D.R.I. 2009) (citing *Connors,* 497 F.3d at 320; *Cain,* 423 F.3d at 620). According to these courts, the property is "sold" at the foreclosure auction, and the delivery of the deed, which customarily happens after the auction, is simply a ministerial act. *Id.* These courts also hold that the words " 'conducted in accordance with applicable nonbankruptcy law' do not expand the cure period according to state-law redemption rights, but rather describe[ ] a foreclosure sale conducted in compliance with (and not in violation of), relevant state law." *Id.* (citation omitted). Thus, "if the foreclosure sale did not violate applicable state law, it follows that when the gavel falls, the right to cure no longer exists." *Id.*

Courts adopting a second approach consider the statutory language to be ambiguous and turn to the legislative history to determine the legislature's intent. Courts following this approach focus on the word "sold" in § 1322(c)(1) and hold that the statutory language is intended to cut off the debtor's right to cure only when the entire sale transaction is complete under state law.[5] They do not regard a "foreclo-

---

**4.** *See, e.g., In re Connors,* 497 F.3d 314 (3d Cir.2007); *Cain v. Wells Fargo Bank, N.A. (In re Cain),* 423 F.3d 617 (6th Cir.2005); *In re Smith,* 85 F.3d 1555, 1558 n. 3 (11th Cir. 1996); *McCarn v. WyHy Fed. Credit Union (In re McCarn),* 218 B.R. 154 (10th Cir. BAP 1998); *In re Medaglia,* 402 B.R. 530 (Bankr. D.R.I.2009); *In re McKinney,* 344 B.R. at 5–6; *In re Crichlow,* 322 B.R. at 234.

**5.** *See, e.g., In re Wescott,* 309 B.R. 308, 314 (Bankr.E.D.Wis.2004) (allowing cure when petition filed after judicial foreclosure sale but before judicial confirmation of the sale); *Randall v. Equicredit Fin. Serv. Corp. (In re Randall),* 263 B.R. 200, 202 (D.N.J.2001) (holding that § 1322(c)(1) right to cure is not extinguished until rights of redemption have expired under state law); *In re Spencer,* 263 B.R. 227, 231 (Bankr.N.D.Ill.2001) (referring

sure sale" as an event, but instead, part of a process culminating in the delivery and recordation of the deed, with the debtor's right to cure surviving until title to the property passes to the purchaser under the relevant state law. The U.S. Bankruptcy Court for the District of New Hampshire adopted this approach in *In re Beeman*, a 1999 decision upon which the Debtor relies, and which the Bank argues was wrongly decided.

### C. *In re Beeman*

In *Beeman*, the bankruptcy court considered whether, under § 1322(c)(1), a chapter 13 debtor could cure a default on a mortgage note through his plan when the foreclosure auction occurred prior to the petition date, but the buyer had not yet recorded the foreclosure deed. The bankruptcy court acknowledged the New Hampshire Supreme Court's decision in *Barrows, supra*, which ruled that a mortgagor does not retain legal or equitable interest in property once a foreclosure auction is held. Notwithstanding New Hampshire state law, the court determined the amendments to § 1322, made subsequent to *Barrows*, created federal cure rights. Analyzing what it considered to be the plain language of § 1322, the *Beeman* court determined that § 1322(b) and (c) provide an independent right to cure under the Bankruptcy Code, apart from the debtor's right to redeem under state law. The court found that: (1) § 1322(c) preempts state redemption law with respect to when a chapter 13 debtor's rights to cure and reinstate a mortgage are cut off; (2) such cure and reinstatement rights end when a foreclosure sale process is complete; and (3) state foreclosure law determines when the foreclosure sale pro-

cess ends. 235 B.R. at 525. Turning to state law, the court noted that title does not pass to a purchaser at a foreclosure auction until the foreclosure deed is recorded (see N.H.Rev.Stat. Ann. 479:26), and concluded that property is not "sold at a foreclosure sale" until the entire process (including recordation of the foreclosure deed) has taken place. Thus, the court concluded, as of the petition date, the debtors retained a federal interest that became property of the estate under § 541(a)(1). *Id.* (citing *In re Hazleton*, 137 B.R. 560, 562 (Bankr.D.N.H.1992) (explaining that the question of whether property of the estate exists necessitates examining whether any federal interests exist)).

Although the bankruptcy court in the present case did not specifically mention *In re Beeman* when rendering its decision, it applied the same approach, concluding that § 1322(c) provides debtors with a federal right of redemption until the time that a foreclosure sale is "complete," and that, under New Hampshire law, a foreclosure sale is not "complete" until the buyer records the deed and receives legal title. Thus, it ruled, because the Bank did not record the deed before the petition date, the Debtor retained an interest in the property, i.e. the right of redemption under § 1322(c). We conclude that the bankruptcy court's decision was legal error, as discussed below.

### II. Analysis

As Judge Haines pointed out in *McKinney*:

> [T]he major fork in § 1322(c)(1) interpretation is the ambiguous/ unambiguous determination. If a court deter-

---

to state law and finding that, in Illinois, "foreclosure sale is not complete until an order confirming the sale has been entered"); *In re Beeman*, 235 B.R. at 526; *In re Barham*, 193

B.R. 229, 232 (Bankr.E.D.N.C.1996) (determining that property is "sold" only when a foreclosure sale has been completed under state law).

mines the provision unambiguous, it must then consider whether the content of state foreclosure law comes into play at all in achieving the statutory aim. *Compare, e.g., In re Bobo,* 246 B.R. 453, 457 (Bankr.D.C.2000) (§ 1322(c)(1) is unambiguous; state foreclosure processes not to be considered in determining when property is "sold"), with *Crichlow,* 322 B.R. at 234 (§ 1322(c)(1) is unambiguous, but state foreclosure law is relevant to whether, and when, there has been a foreclosure sale). Courts concluding that § 1322(c)(1) is ambiguous are doubly challenged. They must first determine the provision's meaning in the face of contradictory legislative history, *see McCarn v. WyHy Fed. Credit Union (In re McCarn),* 218 B.R. 154, 160–61 & n. 5 (10th Cir. BAP 1998), and then confront the extent to which state law must be taken into account, *Colon,* 319 F.3d at 917–19.

*McKinney,* 344 B.R. at 5.

■ We conclude that the language of § 1322(c)(1) is clear, unambiguous and needs no interpretation. "The phrase 'sold *at* a foreclosure sale' refers to a sale that occurs *at* a foreclosure auction." *Id.* at 5–6. The additional phrase "conducted in accordance with applicable nonbankruptcy law" is a requirement that the foreclosure was noticed, convened and held in compliance with applicable state laws. *Id.* (citations omitted); *see also Crichlow,* 322 B.R. at 234. "To define the word 'sold' as the point at which a deed is transferred to the prevailing bidder subsequent to the date of the auction likewise removes the words 'foreclosure sale' from the statute." *Crichlow,* 322 B.R. at 234. Thus, we conclude that the Debtor's residence was "sold at a foreclosure sale" before he filed his bankruptcy petition.

■ Even if we were to conclude that § 1322(c)(1) is ambiguous and that we

must look to state law to ascertain when a foreclosure sale "occurs" or is "final," it is clear that, under New Hampshire law, the foreclosure process is complete *as to the mortgagor* at the time the gavel falls at the foreclosure auction. *See Barrows,* 141 N.H. at 393, 687 A.2d 979; *see also Calef v. Citibank, N.A.,* No. 11–cv–526–JL, 2013 WL 653951, at *5 (D.N.H. Feb. 21, 2013) (citing, among other cases, *Barrows,* 141 N.H. at 393, 687 A.2d 979); *McAdam v. Lorden,* No. 04–CV–472–PB, 2005 WL 2340739, at *3 (D.N.H. Sept. 26, 2005). As noted above, under New Hampshire law, the mortgagor's equity of redemption ends when the gavel falls. *See* N.H.Rev.Stat. Ann. § 479:18; *Barrows,* 141 N.H. at 393, 687 A.2d 979 ("The mortgagor does not have a right of redemption after foreclosure."). Thus, even though legal title does not pass to the purchaser until the deed has been recorded, a mortgagor does not have a right of redemption after the gavel has fallen and the memorandum of sale is signed.

■ In this case, because the foreclosure auction took place prior to the petition date, the Debtor no longer had any right of redemption and no legal or equitable interest in the property under New Hampshire law. As the Debtor was divested of all equitable interests in the property as of the petition date, the property was not property of the estate, and he had no ability to cure his defaults under § 1322(c)(1). To interpret the law differently would give the Debtor substantially more legal or equitable rights than he has under state law.

Consequently, we conclude that the bankruptcy court erred in its interpretation of § 1322(c)(1), and abused its discretion in denying the Bank's motion for relief from the automatic stay.

*CONCLUSION*

For the reasons set forth above, we **REVERSE** the bankruptcy court's order denying the Bank's motion for relief from the automatic stay, and **REMAND** to the bankruptcy court for entry of an order granting the Bank's motion for relief from the automatic stay.