**FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# FOR THE FIRST CIRCUIT

———————————————

**BAP NO. MB 24-012**

———————————————

**Bankruptcy Case No. 24-10550-JEB**

———————————————

**STEVEN T. CARRIGAN, SR.,**
**Debtor.**

———————————————

**STEVEN T. CARRIGAN, SR.,**
**Appellant.**

———————————————

**Appeal from the United States Bankruptcy Court**
**for the District of Massachusetts**
**(Hon. Janet E. Bostwick, U.S. Bankruptcy Judge)**

———————————————

**Before**
**Godoy, Cary, and González,**
**United States Bankruptcy Appellate Panel Judges.**

———————————————

**David G. Baker, Esq., on brief for Appellant.**

———————————————

**February 18, 2025**

———————————————

**Godoy, U.S. Bankruptcy Appellate Panel Judge.**

The chapter 13 debtor, Steven T. Carrigan, Sr. (the "Debtor"), who had a prior chapter 13 case which was dismissed for failure to make plan payments, appeals from the bankruptcy court's June 21, 2024 order in his current case denying his motion to extend the automatic stay under § 362(c)(3).[1]  Finding no abuse of discretion by the bankruptcy court in declining to extend the automatic stay, we **AFFIRM**.

## BACKGROUND

**I.      Debtor's Prior Bankruptcy Case**

In his prior chapter 13 bankruptcy case filed in July 2023 (the "First Case"), the Debtor disclosed that he owned his residence (the "Property"), which was encumbered by a mortgage lien held by U.S. Bank Trust National Association, as Trustee of LB-Cabana Series IV Trust ("U.S. Bank").  See Case No. 23-11118 (Bankr. D. Mass.).  The Debtor's schedules reflected he was unemployed.

The Debtor filed a chapter 13 plan, in which he proposed to make monthly payments of $100 for the first 10 months and then $2,000 for the next 50 months.  The plan provided that the Debtor would pay pre-petition mortgage arrears through the plan and make post-petition mortgage payments outside the plan.  The plan provided no treatment for priority unsecured tax claims and proposed to pay holders of allowed general unsecured claims a fixed amount of $11,652.67, to be shared pro rata.

U.S. Bank objected to confirmation, arguing that the plan was not feasible as the Debtor was unemployed with no source of income to fund the plan.  The chapter 13 trustee, Internal Revenue Service ("IRS"), and Massachusetts Department of Revenue ("MDOR") also objected

---

[1]  Unless otherwise indicated, all references to specific statutory sections are to the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532.

to confirmation, arguing that the plan did not provide for full payment of the priority tax claims as required by § 1322(a)(2). After a hearing, the bankruptcy court sustained the objections to confirmation.

In October 2023, U.S. Bank moved for relief from stay under § 362(d)(1) due to the Debtor's failure to make post-petition mortgage payments, and the chapter 13 trustee moved to dismiss the case due to the Debtor's failure to make any plan payments. While those motions were pending, in January 2024, the Debtor filed an affidavit stating he had become employed. Shortly thereafter, however, the bankruptcy court granted U.S. Bank's motion for stay relief and then, on February 1, 2024, the court dismissed the First Case for failure to make payments under the proposed plan.

## II.     The Current Bankruptcy Case

Less than two months after the First Case was dismissed, the Debtor filed another chapter 13 petition on March 22, 2024, which commenced the current case (the "Current Case"). On his Schedule I, the Debtor indicated he was employed. His Schedule J reflected monthly income of $4,463.77 and monthly expenses of $3,547.50, leaving $916.27 of disposable income.

### A.     Proofs of Claim

U.S. Bank filed a proof of claim, asserting a $332,771.05 secured claim, including about $120,000 in pre-petition arrears. The MDOR asserted a claim in the total amount of $39,850.88, with $30,950.88 classified as priority unsecured and the balance as general unsecured. The IRS asserted a claim in the total amount of $77,317.62, with $75,165.17 classified as secured, $100.00 as priority unsecured, and the balance as general unsecured.[2]

---

[2] Although the MDOR and the IRS amended their claims after the bankruptcy court entered the order at issue in this appeal, the amended claim amounts are not relevant to our review and are not reflected here.

**B.      Chapter 13 Plan and Objections to Confirmation**

With his petition, the Debtor also filed a chapter 13 plan (the "Plan") in which he proposed to make monthly payments of $900 for the first 6 months and then $1,520 for the next 54 months.  As with the plan filed in his previous case, this Plan: (1) proposed to cure pre-petition mortgage arrears through the Plan and to make post-petition payments outside of the Plan; (2) provided no treatment for payment of the priority tax claims; and (3) proposed to pay holders of allowed general unsecured claims a fixed amount of $11,652.67, to be shared pro rata.

U.S. Bank objected to confirmation, arguing that the Plan did not provide for the total amount of pre-petition mortgage arrears owed and was not feasible as the Debtor's Schedule J reflected disposable income of only $916.77.  The chapter 13 trustee (the "Trustee") also objected to confirmation arguing, among other things, that the Plan failed to provide any treatment for the priority tax claims.

**C.      Debtor's Motion to Extend Automatic Stay**

Because the Debtor had a prior case pending in the previous year that was dismissed, he also filed with his petition on March 22, 2024, an emergency motion seeking to extend the automatic stay under § 362(c)(3)(B) ("Motion to Extend Stay").[3]  The Debtor asserted that when he filed the First Case, he had been unemployed for some time because he was a single father who had to care for his young children.  Although he obtained employment while the First Case was pending, he was unable to commence plan and mortgage payments quickly enough to prevent the bankruptcy court from granting stay relief to U.S. Bank and dismissing his case.  However, the Debtor contended, he now had sufficient income to make those payments.

---

[3] Because the Debtor's First Case was dismissed within the preceding year, the automatic stay was set to automatically expire 30 days after the petition date—on April 21, 2024—unless the bankruptcy court extended the stay.  See 11 U.S.C. § 362(c)(3).

Accordingly, the Debtor argued, there had been "a substantial change in circumstances" within the meaning of § 362(c)(3) that justified extending the stay as to all creditors.

The bankruptcy court scheduled the Motion to Extend Stay for an evidentiary hearing on April 11, 2024, with an objection deadline of April 10, 2024. No objections to the Motion to Extend Stay were filed. After the hearing, the bankruptcy court entered an order on April 12, 2024, denying the motion for the reasons set forth on the record (the "April 12th Order").[4]

### D.      Motion to Reconsider April 12th Order

Five days later, the Debtor filed an emergency motion for relief from the April 12th Order ("Motion to Reconsider"), asserting that the stay should have been extended because there were "other reasons" to find his Current Case would be "concluded successfully," given that he was now employed and able to make payments to the Trustee and U.S. Bank. The Debtor further argued that in the context of a motion to extend the automatic stay, a plan does not have to be "confirmable on its face" since it can be modified, and he emphasized that no objections to the Motion to Extend Stay had been filed, which "strongly weigh[ed] in favor of rebutting any inference of lack of good faith." He filed the Current Case "in good faith and for legitimate purposes" and "intend[ed] to confirm a plan and fully perform it," the Debtor asserted. Thus, he argued, relief from the April 12th Order was warranted.

### E.      Order Granting Motion to Reconsider and Vacating April 12th Order

On April 18, 2024—before the 30-day period expired—the bankruptcy court, without a hearing, entered an order granting the Motion to Reconsider in part, extending the automatic stay as to all creditors through May 10, 2024. The bankruptcy court also scheduled a hearing for

---

[4] We cannot ascertain what transpired at the April 11, 2024 hearing as there is no transcript in the record.

May 9, 2024—after the expiration of the 30-day period—to consider the Motion to Reconsider and the Motion to Extend Stay.

After the May 9, 2024 hearing, the bankruptcy court granted the Motion to Reconsider for the reasons set forth on the record and vacated the April 12th Order.[5]  It also granted the Motion to Extend Stay in part, extending the automatic stay as to all creditors through June 21, 2024, and continuing the hearing on the Motion to Extend Stay to June 20, 2024.

**F.      The Amended Plan**

On May 10, 2024, the bankruptcy court entered orders sustaining the objections to confirmation of the Plan and ordering the Debtor to file an amended plan by June 7, 2024.

Thereafter, the Debtor filed an amended chapter 13 plan ("Amended Plan"), in which he proposed to make monthly payments of $900 for two months and then $2,341 for the next 58 months.  The Amended Plan provided that the Debtor would pay pre-petition mortgage arrears of $119,528.81 through the plan (increased from the prior Plan) and make post-petition mortgage payments outside of the plan.  Again, the Amended Plan provided no treatment for the priority tax claims of the IRS and the MDOR.  This time, however, instead of proposing to pay holders of allowed general unsecured claims a fixed amount, the Debtor proposed to pay such claimants a fixed percentage of 1% of their claims.

**G.      Order Denying Motion to Extend Stay**

The bankruptcy court held another hearing on the Motion to Extend Stay on June 20, 2024 (the "June 20th Hearing").  At the outset, the bankruptcy court presented its "preliminary ruling" as follows:

---

[5]  We also cannot discern what transpired at the May 9, 2024 hearing as there is no transcript in the record.

So we've had a couple of hearings on [the Motion to Extend Stay] and I've expressed concern, particularly given the debtor's performance in the last case. The issue is the debtor's obligation to show by clear and convincing evidence that there is a change of circumstance or other reason that this [case] . . . has a substantial likelihood of a confirmable plan and, at this point, I don't see that.

The debtor's most recent plan, one of the issues has been both the secured creditor claim and, more importantly, the taxes. The debtor's most recent plan does not have a reasonable prospect for success. The debtor . . . indicated that . . . instead of . . . pay[ing] the priorit[y] claim[s] for the taxing authorities, neither of which he put in [the Amended Plan,] [h]e was going to instead treat the plan as an offer of compromise.[6]

That is not permissible. It is true the debtor can separately request an offer of compromise, but the cases on which the debtor relies all happen before Espino[s]a, which is when the court said you can't add in additional conditions in a plan that you couldn't do otherwise. . . . [T]he offers to compromise have a very strict structure. The debtor's proposal of one percent [to the taxing authorities] seems to me to be . . . unrealistic . . . .
        . . . .
. . . So my preliminary ruling would be to deny the motion to extend the stay because I've given the debtor an ample opportunity [to propose a confirmable plan], but this debtor does not have a realistic prospect of a confirmable plan at this juncture.

When the Debtor stressed that no objections had been filed with respect to the Amended Plan, the bankruptcy court interjected that it had an "independent obligation" to ensure that the plan complied with the Bankruptcy Code, and the Amended Plan was "not confirmable on its face" because it did not provide adequate treatment for the priority tax claims. The Debtor countered:

I understand what Espino[s]a said and the case law I've cited in the case that as regards to taxing by a claim [sic] that they cannot deny or refuse to consider an offer of compromise because the debtor is in bankruptcy . . . .[7]

---

[6] "An 'offer in compromise' is an [IRS] program under 26 U.S.C. § 7122 which allows taxpayers with a tax debt to negotiate a settled amount that is less than the total amount owed . . . ." In re Laureano Molina, 487 B.R. 73, 75 (Bankr. D.P.R. 2013). The MDOR has a similar program. See Mass. Gen. Laws ch. 62C, § 37A.

[7] The bankruptcy court interpreted the Debtor's argument to be that his proposal in the Amended Plan to pay a fixed percentage of 1% of allowed general unsecured claims constituted an "offer in compromise" to the taxing authorities to pay 1% of the entire tax debt owed. This argument is not articulated by the

7

> [The Amended Plan] is feasible for him and treats the mortgagee claim properly in the amount set forth in the proof of claim. . . .

> . . . I really think that the Court should grant the motion [to extend stay], at least for another period of time to see where we go with the plan.

The Trustee, in turn, argued that the Debtor's proposed treatment of the tax claims raised feasibility concerns because there was no alternative treatment for those claims if the taxing authorities did not accept the Debtor's offered compromise of 1%. She emphasized that § 1322 requires the plan to provide full payment for priority claims unless the claimant agrees to different treatment, and a claimant's failure to object to confirmation of a chapter 13 plan is insufficient to constitute such agreement. Therefore, the plan needed to have an alternative provision for payment of the tax claims in the event the taxing authorities did not agree to the offer in compromise. The bankruptcy court agreed, stating:

> [T]he debtor can [make] . . . an offer of compromise. What the debtor can't do, is do that through a plan for the reason . . . that under [§] 1322 [the taxing authorities] have to agree. So the debtor has to have a treatment . . . for those [claims] and if the debtor is successful in the offer of compromise, it would reduce the amount or if the debtor has an agreement from the taxing authorities as to a treatment, but it isn't simply that they don't object to the plan.

U.S. Bank also argued that the Amended Plan was not feasible. It asserted that, while the Amended Plan now provided for full payment of the pre-petition mortgage arrears, it was not feasible as the Debtor's bankruptcy schedules showed disposable income of only $916.27 and understated the mortgage payment amount by $526. U.S. Bank also emphasized that the Debtor had made only one post-petition mortgage payment and post-petition arrears were almost $6,000.

---

Debtor in any of his written submissions to the bankruptcy court; however, the Debtor does not challenge the bankruptcy court's interpretation.

After hearing from the parties, the bankruptcy court stated, without further elaboration, that it was denying the Motion to Extend Stay. It then entered an order denying the Motion to Extend Stay for the reasons stated on the record (the "Order Denying Motion to Extend Stay").

## III.    The Appeal

The Debtor timely appealed the Order Denying Motion to Extend Stay. His requests for a stay pending appeal from the bankruptcy court and the Panel were denied, as was his petition for writ of mandamus to the U.S. Court of Appeals for the First Circuit. It appears from submissions of the parties in the bankruptcy court that, in the absence of a stay, U.S. Bank has foreclosed its mortgage, and the Property has been sold.[8]

The bankruptcy court docket also reflects that while this appeal has been pending, both the Trustee and U.S. Bank filed objections to the Amended Plan, which were sustained. The Debtor then filed a second amended plan, to which the Trustee and U.S. Bank objected. After a hearing on February 6, 2025, the bankruptcy court sustained the objections to confirmation of the second amended plan and ordered the Debtor to file another amended plan.

## DEBTOR'S POSITION ON APPEAL

The Debtor argues that the bankruptcy court erred in denying an extension of the automatic stay. Although the Debtor recognizes there was a statutory presumption that he did not file the Current Case in good faith, he argues that the bankruptcy court determined he had not rebutted the presumption, "based on an apparent conclusion that there was no possibility that he could ever obtain confirmation of a chapter 13 plan and fully perform it" and that the bankruptcy court violated his due process rights in doing so. The Debtor asserts:

---

[8]  See TD Bank, N.A. v. LaPointe (In re LaPointe), 505 B.R. 589, 591 n.1 (B.A.P. 1st Cir. 2014) (stating Panel "may take judicial notice of the bankruptcy court's docket and imaged papers").

It is well settled that due process requires notice and an opportunity to be heard. In this case, the bankruptcy court issued no order(s) or preliminary rulings <u>before</u> the hearing, but instead commenced the hearing by explaining why she intended to deny the requested extension even though no party in interest objected to the motion. Her reason, essentially, was that there was no reasonable likelihood that Mr. Carrigan could obtain confirmation of <u>any</u> plan and fully perform it because of seemingly inappropriate provisions in the plan. She ignored, at least implicitly, the fact that a plan can be amended, if necessary, in order to address any issues raised by the court, creditors, or the trustee. The crux of her rulings was, therefore, that there was no plan he could propose, at any time, that had a reasonable likelihood of being confirmed. This is prejudicial and a clear error of law and fact.

(footnote omitted).

## **APPELLATE JURISDICTION**

We have jurisdiction to hear appeals from final orders of the bankruptcy court. <u>See</u> 28 U.S.C. § 158(a)-(c); <u>see also</u> <u>Ritzen Grp., Inc. v. Jackson Masonry, LLC</u>, 589 U.S. 35, 39 (2020). An order is final for purposes of appeal if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." <u>Catlin v. United States</u>, 324 U.S. 229, 233 (1945) (citation omitted); <u>see also</u> <u>Fleet Data Processing Corp. v. Branch (In re Bank of New Eng. Corp.)</u>, 218 B.R. 643, 646 (B.A.P. 1st Cir. 1998). Because an order denying an extension of the automatic stay under § 362(c)(3)(B) ends "the litigation on the merits of the issue of the automatic stay," leaving nothing more for the bankruptcy court to do with respect to that issue, it is a final order for purposes of appeal. <u>Makozy v. Crawford (In re Makozy)</u>, No. 13-61533-CIV, 2013 WL 6162823, at *5 (S.D. Fla. Nov. 25, 2013).[9]

---

[9] We recognize that this appeal has become moot as to U.S. Bank, as the record reflects that, in the absence of a stay, the Property has been sold at a foreclosure sale. <u>See</u> <u>Marquis-Kiliany v. Deutsche Bank Nat'l Tr. Co.</u>, No. 8:18-cv-2486-T-36, 2019 WL 13072431, at *7 (M.D. Fla. Aug. 23, 2019) (dismissing appeal of order denying extension of automatic stay under § 362(c)(3) as moot where there was no stay pending appeal and property was sold at foreclosure sale). However, the appeal is not moot as to the bankruptcy court's refusal to extend the stay as to other creditors, such as the taxing authorities.

10

We review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. Jeffrey P. White & Assocs., P.C. v. Fessenden (In re Wheaton), 547 B.R. 490, 496 (B.A.P. 1st Cir. 2016). Because it is ultimately within the bankruptcy court's discretion as to whether to extend the automatic stay under § 362(c)(3), a bankruptcy court's decision not to extend the stay is reviewed for an abuse of discretion. See Rice-Harris v. First Fed. Sav. Bank (In re Rice-Harris), No. 17 C 6489, 2018 WL 1762441, at *3 (N.D. Ill. Apr. 12, 2018) (reviewing court's decision not to extend the automatic stay for abuse of discretion); see also Palladino v. HSBC Bank USA, N.A., 502 F. Supp. 3d 1336, 1340 (N.D. Ill. 2020) (same). However, a bankruptcy court's determination as to whether the debtor filed the later case in good faith for purposes of § 362(c)(3)(B) is a factual finding reviewed for clear error. See In re Rice-Harris, 2018 WL 1762441, at *3; see also Morillo v. Wells Fargo Bank, N.A., No. 19-CV-08183 (PMH), 2020 WL 2539068, at *3 (S.D.N.Y. May 19, 2020).

## DISCUSSION

I.    **Relevant Legal Standards**

A.    **Section 362(c)(3)(A):  Automatic Termination of the Automatic Stay
      For Repeat Filers**

Generally, "the filing of a bankruptcy petition automatically stays any judicial action against the debtor, enforcement of any judgment obtained against the debtor, or the enforcement of any lien against the debtor's property." Palladino, 502 F. Supp. 3d at 1340 (citing 11 U.S.C. § 362(a)). "For first-time filers, the stay is automatic and permanent, at least until the bankruptcy case closes or a court acts to modify the stay." Smith v. Me. Bureau of Rev. Servs. (In re Smith), 910 F.3d 576, 586 (1st Cir. 2018) (citing 11 U.S.C. § 362(a)(1)-(2) & (d)). But under § 362(c)(3)(A), when a debtor has had a prior case which was dismissed within the

previous year, the stay automatically terminates 30 days after the filing of the second case. See 11 U.S.C. § 362(c)(3)(A). Section 362(c)(3)(A) "was designed to combat the acts of 'serial filers,' who file petitions to stop foreclosure, without reasonable prospects of financial rehabilitation." In re Abbott, No. 09-37125, 2010 WL 1780059, at *4 (Bankr. S.D.N.Y. May 4, 2010), aff'd, No. 09-CV-9122 (CS), 2010 WL 11712796 (S.D.N.Y. Sept. 30, 2010); see also Reswick v. Reswick (In re Reswick), 446 B.R. 362, 372 (B.A.P. 9th Cir. 2011) ("The history of [§] 362(c)(3)(A) indicates that Congress intended it to deter second filings.").

### B. Section 362(c)(3)(B): Extending the Automatic Stay

Section 362(c)(3)(B), however, provides that on the motion of a party in interest, and "after notice and a hearing completed before the expiration of the 30-day period," the bankruptcy court may extend the automatic stay if such party "demonstrates that the filing of the later case is in good faith as to the creditors to be stayed[.]" 11 U.S.C. § 362(c)(3)(B); see also In re Smith, 910 F.3d at 588 (stating that § 362(c)(3)(B) "allows the bankruptcy court to extend the temporary automatic stay before it expires at the request of a debtor or a creditor and on a showing of good faith as to the creditors being stayed") (citation omitted). Thus, § 362(c)(3)(B) "authorizes the bankruptcy court to extend the stay beyond the initial 30-day period if four requirements are met: (1) a party in interest files a motion requesting an extension of the automatic stay; (2) there is notice and a hearing on the motion; (3) the bankruptcy court completes the hearing before the expiration of the 30-day period set forth in § 362(c)(3)(A); and (4) the movant demonstrates the new case was filed in good faith as to the creditors being stayed." In re Flynn, 582 B.R. 25, 28-29 (B.A.P. 1st Cir. 2018) (citation omitted). Each of the conditions set forth in § 362(c)(3)(B) must be satisfied. Id. at 29.

The record reflects that the first two elements were met in this case as the Debtor filed the Motion to Extend Stay, the motion was noticed to creditors, and the bankruptcy court held a hearing on the motion before the expiration of the 30-day period. There is some question as to the third requirement—that the hearing be "completed" within the 30-day period—as the bankruptcy court held additional hearings on the Motion to Extend Stay after the 30-day period expired. However, we need not decide whether the third requirement was satisfied because, as discussed below, the Debtor failed to demonstrate he satisfied the final requirement under § 362(c)(3)(B)—that he filed the Current Case in good faith. See In re Pruitt, No. 16-41021-EJC, 2016 WL 6195927, at *3 (Bankr. S.D. Ga. Oct. 21, 2016) (declining to address whether completed hearing requirement was met because debtor failed to prove he filed his second case in good faith).

## II.     Whether the Debtor Demonstrated He Filed the Current Case in Good Faith

### A.     Was There a Presumption of Absence of Good Faith?

As stated previously, to prevail on a motion to extend the stay under § 362(c)(3)(B), the debtor must show the second case was filed in good faith as to the creditors being stayed. "Generally, the moving party must establish the good faith element by a preponderance of the evidence." In re Thomason, 647 B.R. 566, 575 (Bankr. D. Idaho 2022) (citation omitted). "Under certain circumstances, however, a case is presumed not to be filed in good faith, and the moving party must rebut that presumption with 'clear and convincing' evidence that the case was filed in good faith." Id. (citation omitted). Thus, whether a debtor is required to demonstrate good faith by clear and convincing evidence—or by the less onerous preponderance of the

evidence standard—depends on whether there is a presumption that the current case was not filed in good faith.[10]

The rebuttable presumption that a later case was not filed in good faith arises under § 362(c)(3)(C), which provides:

> [A] case is presumptively filed not in good faith (but such presumption may be rebutted by clear and convincing evidence to the contrary)—
> (i) as to all creditors, if—
> (I) more than 1 previous case . . . in which the individual was a debtor was pending within the preceding 1-year period;
> (II) a previous case . . . in which the individual was a debtor was dismissed within such 1-year period, after the debtor failed to—
> (aa) file or amend the petition or other documents as required by this title or the court without substantial excuse . . . ;
> (bb) provide adequate protection as ordered by the court; or
> (cc) perform the terms of a plan confirmed by the court; or
> (III) there has not been a substantial change in the financial or personal affairs of the debtor since the dismissal of the next most previous case . . . or any other reason to conclude that the later case will be concluded—
> (aa) if a case under chapter 7, with a discharge; or
> (bb) if a case under chapter 11 or 13, with a confirmed plan that will be fully performed; and
> (ii) as to any creditor that commenced an action under subsection (d) in a previous case in which the individual was a debtor if, as of the date of dismissal of such case, that action was still pending or had been resolved by terminating, conditioning, or limiting the stay as to actions of such creditor[.]

11 U.S.C. § 362(c)(3)(C).

Here, although the bankruptcy court did not make an explicit finding at the June 20th Hearing as to whether there was a statutory presumption of bad faith, such a finding is implicit in the bankruptcy court's statements at the hearing that to prevail on his Motion to Extend Stay,

---

[10] Evidence is clear and convincing if it is "highly probable or reasonably certain or both." In re Sarafoglou, 345 B.R. 19, 24 (Bankr. D. Mass. 2006) (citation omitted); see also Díaz-Alarcón v. Flández-Marcel, 944 F.3d 303, 306 n.5 (1st Cir. 2019). In contrast, the preponderance of the evidence standard is met "if, after all of each party's evidence is placed on their respective sides of the scales, the scales tip in favor of the one who bears the burden." In re Minawi, 651 B.R. 72, 76 (Bankr. M.D. Fla. 2023) (citation omitted); see also Bezanson v. Fleet Bank-NH, 29 F.3d 16, 21 (1st Cir. 1994) (describing the "preponderance of the evidence standard" as a "more-likely-than-not" burden of proof).

14

the Debtor needed to demonstrate a "change of circumstance" or "a substantial likelihood of a confirmable plan" by "clear and convincing evidence," which is the standard for rebutting the presumption of bad faith. See 11 U.S.C. § 362(c)(3)(C) (providing that presumption must be rebutted with "clear and convincing evidence"). The record before us supports that finding, at least as to U.S. Bank, which obtained relief from the automatic stay in the First Case. See 11 U.S.C. § 362(c)(3)(C)(ii) (providing there is a presumption of bad faith as to any creditor who obtained relief from the automatic stay under § 362(d) in the prior case). In any event, the Debtor has conceded, both in the proceedings below and in this appeal, that there was a presumption of bad faith which he needed to rebut, thereby waiving any argument that there was no such presumption.

## B.     Did the Debtor Rebut the Presumption of Bad Faith?

The Bankruptcy Code does not specify how a debtor can rebut a presumption of bad faith if it arises. In re Rallo, No. 21-20135, 2021 WL 2787602, at *2 (Bankr. D. Me. July 2, 2021). "Some courts measure good faith by applying the same statutory standards found in § 362(c)(3)(C) . . . to determine whether a rebuttable presumption exists that the case has been filed '*not* in good faith.'" In re Ferguson, 376 B.R. 109, 119 (Bankr. E.D. Pa. 2007) (citation omitted); see also Whitaker v. Baxter (In re Whitaker), 341 B.R. 336, 345 (Bankr. S.D. Ga. 2006) (stating that § 362(c)(3)(C) "does not simply state the various circumstances that trigger a presumption of bad faith [but] also indicates how those presumptions may be rebutted"). Thus, these courts require the chapter 13 debtor to rebut the presumption by proving "there has been a substantial change in the debtor's financial or personal circumstances since the dismissal of the previous case and that the current case will likely result in the confirmation of a chapter 13 plan that will be fully performed." In re Ferguson, 376 B.R. at 120 (citation omitted); see also

In re Whitaker, 341 B.R. at 345 ("[T]he chief means of rebutting the presumption of bad faith requires the movant to establish 'a substantial change in the financial or personal affairs of the debtor . . . or any other reason to conclude' that the instant case will be successful."); In re Thornes, 386 B.R. 903, 909 (Bankr. S.D. Ga. 2007) (stating that "to rebut the presumption, Debtor must establish a 'substantial change' in his financial condition since the prior case that is sufficient to conclude that the current case can both be 'confirmed' and 'fully performed'").

While the statute provides a starting point for the analysis, however, most courts recognize that the bankruptcy court is not "limited to determining that the filing was made in bad faith because of only [the] enumerated factors." In re Makozy, 2013 WL 6162823, at *8. Indeed, many courts, both in the First Circuit and in other jurisdictions, assess good faith for purposes of § 362(c)(3)(B) under a "totality of the circumstances" approach, considering a variety of factors. See, e.g., In re Rallo, 2021 WL 2787602, at *2; In re Baldassaro, 338 B.R. 178, 188 (Bankr. D.N.H. 2006); see also In re Goodrich, 591 B.R. 538, 548 (Bankr. D. Vt. 2018). For example, in In re Baldassaro, the New Hampshire bankruptcy court considered the following factors when assessing good faith under § 362(c)(3):

> (1) the timing of the filing of the later petition, (2) how the debts in the later case arose, (3) why the debtor's prior case was dismissed, including the debtor's conduct in that case, (4) how the debtor's actions affected creditors who are stayed, (5) the debtor's motive in filing the later petition and whether the Bankruptcy Code is being unfairly manipulated, (6) whether the debtor's circumstances have changed since the prior dismissal and the likelihood that the debtor will be able to properly fund a plan, and (7) whether the case trustee or creditors object to the motion to extend.

338 B.R. at 188 (citations omitted). Courts recognize, however, that while such factors "are useful, they do not constitute 'a one size fits all' set of criteria, and the court must tailor use of the factors to the facts and circumstances of each case." In re Goodrich, 591 B.R. at 549; see also Sarafoglou, 345 B.R. at 24 (cautioning against "check-list and schematic approaches").

16

One thing is evident from the case law: "Although there is no one test for good faith, the [c]ourt 'must be satisfied that the plan in the new case will succeed where the plan in the prior case did not.'" In re West, No. 23-20618-CMB, 2023 WL 4387030, at *3 (Bankr. W.D. Pa. July 6, 2023) (citations omitted); see also Collier on Bankruptcy ¶ 362.06[3][b] (Richard Levin & Henry J. Sommer eds., 16th ed.) ("When the prior dismissal is a chapter 13 case, there are generally two primary areas of inquiry: 1) what are the reasons why the debtor's previous plan failed, and 2) what has changed in the debtor's circumstances so that the present plan is likely to be successful.").

Here, the bankruptcy court, expressing concern about the Debtor's performance in the First Case, stated that for the Debtor to prevail on his Motion to Extend Stay, he needed to show there was a "change of circumstance" or a "substantial likelihood of a confirmable plan," which are the statutory standards found in § 362(c)(3)(C)(i)(III). As the First Circuit has not articulated a standard for determining good faith under § 362(c)(3), and there is well-reasoned case law beyond our circuit supporting the bankruptcy court's approach as discussed above, we conclude that the bankruptcy court employed a proper standard when considering the Motion to Extend Stay. Thus, we now examine whether the bankruptcy court's ultimate determination that the Debtor failed to demonstrate he filed the Current Case in good faith is supported by the record.[11]

### 1.	Did the Debtor Demonstrate There Was a Substantial Change in Circumstances?

The bankruptcy court did not, at the June 20th Hearing, address whether there was a substantial change in the Debtor's circumstances between his two bankruptcy cases. The record reflects, however, that while the Debtor was unemployed when he filed his First Case, he became

_____

[11] While the bankruptcy court did not explicitly find a lack of good faith, that finding is implicit in the court's denial of the Motion to Extend Stay after articulating standards that are relevant to the good faith analysis under § 362(c)(3)(B).

employed right before the First Case was dismissed, and he was employed and receiving wages two months later when he filed the Current Case. We need not dwell, however, on whether the Debtor's increased income made it more likely he could make payments to the Trustee and U.S. Bank in his Current Case. Whether or not the Debtor's employment constituted a substantial change in circumstances, it is evident from the record that, despite his increased income, the Debtor did not establish he was likely to confirm and fully perform a plan.

**2.      Did the Debtor Demonstrate There Were Other Reasons to Conclude the Current Case Would Result in a Confirmed Plan that Would Be Fully Performed**

In denying the Motion to Extend Stay, the bankruptcy court found the Debtor did not have a "realistic prospect of a confirmable plan." In so ruling, the bankruptcy court concluded that the Amended Plan was patently unfeasible because it failed to provide adequate treatment for the priority tax claims of the IRS and the MDOR. As discussed below, the bankruptcy court reasonably concluded that the Amended Plan was patently unconfirmable and the record supports the court's conclusion that there was no realistic prospect that the Debtor could confirm any plan and fully perform it.

Section 1325(a) provides that the bankruptcy court "shall confirm" a debtor's chapter 13 plan if it meets the specific requirements therein and "complies with the [other] provisions of" chapter 13. 11 U.S.C. § 1325(a); see also United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 277 (2010) (quoting 11 U.S.C. § 1325(a)). The Amended Plan, however, did not comply with § 1322(a)(2), which requires that a plan "shall provide for full payment, in deferred cash payments, of all claims entitled to priority under [§] 507 . . . , unless the holder of a particular claim agrees to a different treatment of such claim[.]" 11 U.S.C. § 1322(a)(2). Section 1322(a)(2)'s provisions "are mandatory and any plan that fails to provide for full payment of

18

priority claims 'cannot be confirmed without the claim holder's consent.'" In re Trupp, No. 09-60555, 2009 WL 4800083, at *2 (Bankr. S.D. Ill. Dec. 8, 2009) (citation omitted); see also In re Escobedo, 28 F.3d 34, 35 (7th Cir. 1994) (stating that "the requirements of § 1322(a)(2) are mandatory" and "cannot be absent from a confirmable Chapter 13 plan") (citations omitted). "In order to agree to a different treatment, 'the claim-holder must make an express affirmation of consent.'" In re Hutchens, 480 B.R. 374, 382 (Bankr. M.D. Fla. 2012) (citation omitted). Courts hold that "[m]erely failing to object to a proposed Chapter 13 plan, which does not provide for full payment of a priority claim, does not constitute express affirmation." Id. (citation omitted); see also In re Trupp, 2009 WL 4800083, at *2 (stating that creditor's failure to object to the plan does not constitute "consent" for purposes of § 1322(a)(2)).

Here, as the Amended Plan did not provide for full payment of the priority tax claims as required by § 1322(a)(2), it was unconfirmable. While the Debtor argues that the Amended Plan included an offer in compromise to pay 1% of the tax claims, he offered no authority to support his contention that an offer in compromise can be made in a chapter 13 plan.[12] Further, even if the Debtor were permitted to make an offer in compromise in his chapter 13 plan, there is no evidence in the record that the taxing authorities expressly consented to the proposed treatment of their priority claims; the taxing authorities' failure to object to confirmation did not constitute

---

[12] And it seems unlikely that the Debtor could do so as there are strict procedures governing the submission of an offer in compromise. As one court explained with respect to IRS tax claims:

> An OIC [offer in compromise] under [26 U.S.C.] § 7122 "must be submitted according to the procedures, and in the form and manner, prescribed by the Secretary." 26 C.F.R. § 301.7122-1(d)(1). An OIC under § 7122 is generally submitted on IRS Form 656. The IRS may refuse to process an OIC and return the OIC to the taxpayer if the IRS determines that "the offer was submitted solely to delay collection or was otherwise nonprocessable." 26 C.F.R. § 301.7122-1(d)(2). What constitutes a nonprocessable offer is determined by IRS policy.

1900 M Rest. Assocs., Inc. v. United States (In re 1900 M Rest. Assocs., Inc.), 352 B.R. 1, 5 (D.D.C. 2006).

the requisite consent.  See In re Hutchens, 480 B.R. at 382; In re Trupp, 2009 WL 4800083, at *2.  Accordingly, under § 1322(a)(2), the Debtor was required to pay the priority tax claims in full.  As the Amended Plan provided no alternative treatment for full payment of the priority tax claims, the bankruptcy court did not err in determining it was unconfirmable as a matter of law.[13]

While it is true that a debtor's plan "does not have to be definitively confirmable on its face" for purposes of § 362(c)(3)(b), it must "have a reasonable likelihood of success." Sarafoglou, 345 B.R. at 25.  Here, each of the plans proposed by the Debtor were patently unconfirmable because they failed to provide full payment for the priority tax claims.  Although this issue was raised in the First Case—and the bankruptcy court sustained objections to confirmation which were based, at least in part, on this deficiency—the Debtor continued to propose plans that did not provide for payment of the priority tax claims.  And, as stated previously, while his Amended Plan allegedly included an offer in compromise with respect to the tax claims, the Debtor did not explain how he would pay the tax claims if the taxing authorities rejected that compromise, which they were likely to do given the low percentage offered.

Further, there were other factors in the record that supported a determination that the Debtor's Current Case did not have a reasonable probability of success.  The record reflected that, despite the increase in the Debtor's income due to his recent employment, neither of the

---

[13]  Although the Debtor argues his due process rights were violated because the bankruptcy court "sua sponte and without any advance notice . . . decided that the inclusion of an offer in compromise for the taxing authorities was improper," this argument misses the mark.  As the Debtor's ability to confirm a chapter 13 plan was necessarily a part of the bankruptcy court's inquiry under § 362(c)(3)(B), it should have come as no surprise to the Debtor that the bankruptcy court would scrutinize his Amended Plan, including the purported "offer in compromise," and assess the plan's feasibility and confirmability under § 1322.  Thus, we are unpersuaded by the Debtor's due process argument.

Debtor's proposed plans in the Current Case were feasible because his disposable income—as reflected on his schedules—was insufficient to fund his proposed plans, even if the offers in compromise to the taxing authorities were accepted. The record also reflects that, at the time of the June 20th Hearing on the Motion to Extend Stay, the Debtor was already about $6,000 in arrears on post-petition mortgage payments. In other words, the Debtor was already failing to perform under the Amended Plan by falling behind on his mortgage payments, just as he had done in the First Case. As a debtor's failure to make post-petition mortgage payments constitutes cause for relief from stay under § 362(d)(1), see Azevedo v. U.S. Bank N.A. (In re Azevedo), BAP No. MW 17-051, 2018 WL 7377880, at *6 (B.A.P. 1st Cir. Aug. 29, 2018), it follows that a debtor's failure to make post-petition mortgage payments also weighs against extending the stay under § 362(c)(3)(B).

While the Debtor makes much of the fact that there were no objections to the Motion to Extend Stay, the lack of objections did not compel a good faith finding. Although some courts hold that, in the absence of any objections to a motion to extend the stay under § 362(c)(3)(B), the bankruptcy court may grant the motion without holding a hearing, see, e.g., In re McMinn, 452 B.R. 247, 248 (Bankr. D. Kan. 2011), this does not mean that the bankruptcy court *must* grant the motion if no objection has been filed or that the bankruptcy court is precluded from holding a hearing to determine whether there is an absence of good faith. While the absence of objections to a motion to extend the stay is a factor considered by courts when considering the totality of the circumstances, "a lack of creditor opposition alone does not amount to clear and convincing evidence of good faith. Without more, there is insufficient evidence to rebut the presumption that the case was not filed in good faith under [§] 362(c)(3)(B)." In re West, 2023 WL 4387030, at *3; see also In re Wilson, 336 B.R. 338, 348-49 (Bankr. E.D. Tenn. 2005)

21

(stating that "[n]otwithstanding the lack of objections, without clear and convincing evidence to rebut the presumption," the court would not extend the stay). In addition, while neither the Trustee nor U.S. Bank filed a written objection to the Motion to Extend Stay, they both expressed concerns about the feasibility of the Amended Plan and the Debtor's ability to confirm, fund, and fully perform a plan. Therefore, the lack of written oppositions to the Motion to Extend Stay was not a controlling or dispositive factor in the good faith analysis.

For these reasons, the record supports a determination that the Debtor failed to establish by clear and convincing evidence—or even by a preponderance of the evidence—that the Current Case was likely to conclude with a confirmed plan which the Debtor could fully perform. We conclude, therefore, that the bankruptcy court did not err in determining that the Debtor did not establish good faith in the filing of his Current Case or abuse its discretion in denying the Motion to Extend Stay.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the Order Denying Motion to Extend Stay.